KEITH T. LARSON *vs.* SCHOOL COMMITTEE OF PLYMOUTH
& others.[1]

Plymouth. January 3, 2000. - February 3, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*School and School Committee,* Termination of employment, Retirement benefits, Group insurance. *Public Employment,* Accidental disability retirement, Forfeiture of retirement benefits, Retirement, Termination. *Statute,* Construction.

A tenured school teacher's termination for cause precluded his claim for continued health insurance benefits based on his subsequent retirement on accidental disability effective on a date predating his dismissal, where the provisions of G. L. c. 32B, §§ 9 and 17, were not applicable to public employees involuntarily terminated for cause. [721-724]

CIVIL ACTION commenced in the Superior Court Department on July 5, 1996.

The case was heard by *Suzanne DelVecchio,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert W. Galvin* for the plaintiff.

*Harold F. Kowal* for the defendants.

GREANEY, J. We transferred this case here on our own motion to decide whether the plaintiff, a tenured school teacher who was terminated for cause by the defendant, the school committee of Plymouth (committee), is ineligible for health insurance benefits provided by the town of Plymouth to retired employees under G. L. c. 32B, § 9. A judge in the Superior Court concluded that the plaintiff was entitled to such benefits because, despite his termination for cause, he had been granted an accidental disability retirement by the Teachers' Retirement Board (board), pursuant to G. L. c. 32, § 7, and the date of retirement assigned by the board predated his dismissal for cause. We

---

[1] The superintendent of schools of Plymouth and the town of Plymouth.

conclude that the plaintiff is not entitled to the benefits because the controlling event for determining eligibility for health insurance benefits is his termination for cause, and G. L. c. 32B, § 17, the relevant statute in the case of a termination, makes no provision for the continuation of health insurance benefits for someone in the plaintiff's position. Accordingly, we vacate the judgment.

The background necessary to decision of the case may be summarized as follows. The plaintiff was a tenured teacher employed by the committee[2] from 1984 until he was terminated for cause on June 16, 1992, after a hearing conducted by the committee pursuant to G. L. c. 71, § 42. The plaintiff was dismissed because of conduct unbecoming a teacher; insubordination; and other reasons, including his failure to maintain positive and cooperative relationships with his supervisors and evaluators. The plaintiff did not appeal from his dismissal either to arbitration under the applicable collective bargaining agreement or under G. L. c. 71, § 43A, to the Superior Court.[3] The dismissal became final.

At about the same time that the plaintiff received notice from the committee of its intention to "take a vote upon your dismissal as a teacher . . . on 16 June 1992," he applied to the board for accidental disability retirement pursuant to G. L. c. 32, § 7. Approximately two years later, the plaintiff was granted an accidental disability retirement by the board with an imputed retroactive retirement date of June 5, 1992, the last date on which the plaintiff received pay.[4] (This date does not indicate that the plaintiff ceased employment on that date, but rather

---

[2] The committee was the Plymouth-Carver regional school district committee when the plaintiff was hired.

[3] The plaintiff's termination predated revisions to the provisions of G. L. c. 71, § 42, governing the dismissal of tenured teachers made in the Education Reform Act of 1993, St. 1993, c. 71, § 44.

[4] The reason that the date was imputed was explained by the board in a letter to a representative of the committee as follows:

"Massachusetts General Law[s] Chapter 32, section 7 allows for three possible effective dates of retirement in the case of an accidental disability retirement. They are the date the injury was sustained; the date six months prior to the filing of the written application for such retirement; or the date for which the applicant last received regular compensation for his employment, whichever date last occurs. In [the plaintiff's] case, the last date among the three set forth above is the date he last received regular compensation which was June 5, 1992."

indicates that he received no salary after that date. Because the plaintiff had depleted his paid sick leave time, he was employed in a nonpaid status [unpaid sick leave] from June 5, 1992, until he was dismissed for cause eleven days later on June 16, 1992.)

The plaintiff then applied to the committee for G. L. c. 32B health insurance coverage under the town's group plan. The superintendent denied his request because he had been fired. The plaintiff then filed this action in the Superior Court seeking a declaration pursuant to G. L. c. 231A that he had been unlawfully terminated from the town's group health insurance plan, and full restitution of the money he had paid to maintain his health insurance in the interim. The parties agreed on the pertinent facts and documents, and they filed cross motions for summary judgment. The judge allowed the plaintiff's motion insofar as it sought a declaration that he had been unlawfully denied participation in the town's group health insurance plan.[5] The judge reasoned, in substance, that, because the effective date of the plaintiff's accidental disability retirement, as set by the board (June 5, 1992), preceded the date of dismissal (June 16, 1992), the plaintiff was an employee retired pursuant to G. L. c. 32B, § 7, and thereby entitled under G. L. c. 32B, § 9, to participate, along with other retired employees, in the town's group health insurance plan. Judgment was entered, and this appeal ensued.

1. The dispositive question is whether the plaintiff's termination for cause precludes his claim for health insurance benefits in light of his retirement on accidental disability effective on a date (as determined by the board) that predated his dismissal. The answer to the question rests in a critical analysis of relevant statutes, in particular, G. L. c. 32B, §§ 9 and 17, that make provision for health insurance benefits for public employees who retire or are otherwise separated from their employment.

General Laws c. 32B, § 9, provides for the maintenance of health insurance coverage by a public employee[6] who (1) retires (first par.), (2) terminates his service and defers retirement (third par.), and (3) terminates his service (fourth par.). These provisions also set forth the manner in which the coverage may

---

[5]The judge made other rulings and orders that are challenged on appeal, but that we need not decide in view of our conclusion that the plaintiff is not entitled to participate in the town's health insurance plan.

[6]General Laws c. 32B applies to public employees "in the service of counties, except Worcester county, cities, towns and districts." G. L. c. 32B, § 1.

be continued and the level of contribution, if any, by the public employee for continuing coverage. In certain circumstances, the retired public employee can continue coverage in the public employer's group health insurance policy with the public employer obliged to contribute to monthly premium payments at the same percentage, fifty per cent or more, paid on behalf of active employees. G. L. c. 32B, §§ 7, 9A, 9E. The public employee who terminates his employment, but defers retirement, is granted a leave of absence and may continue health insurance coverage through the group policy so long as he applies for such coverage and pays the entire monthly premium. G. L. c. 32B, § 9. The public employee who terminates his employment may continue health insurance coverage by converting to an individual health insurance policy and paying the entire monthly premium. *Id.* As can be readily seen, the statute's scale of benefits reserves the most advantageous arrangement, in economic terms, for the retired public employee.

General Laws c. 32B, § 17, provides for the continuation of health insurance coverage for a public employee who incurs an "involuntary termination of employment due to lack of funds, lack of work, or abolition of the position." Such an employee may continue to receive health insurance coverage in the public employer's group plan for up to thirty-nine weeks by paying the total monthly premiums. Section 17 makes no provision for any employee who is involuntarily terminated for a reason other than one of the three reasons stated therein. Excluded, therefore, from the statute's application is a public employee who is involuntarily terminated by being dismissed for cause.

The plaintiff's claim to continued health insurance coverage at the most economically advantageous level through the town's group policy is predicated on his assertion that, because of the board's action granting him accidental disability retirement under G. L. c. 32, § 7, effective on a date that precedes the date of his dismissal for cause by eleven days, he is a "retired employee" within the meaning of that term in the first paragraph of G. L. c. 32B, § 9. The latter statute, however, as we read it, envisions retirement or separation from public service in the usual manner, that is, by the *voluntary* retirement of a public employee for superannuation (or accidental disability retirement for a public employee who is on the superannuation track, but is removed from the track by work-related injury that causes permanent disability), or by other *voluntary* separation from

service by the public employee's termination of service with or without deferral of retirement. The statute contemplates the ordinary succession of events that occurs when a public employee chooses to retire based on years of service (or because of accidental work-related injury that causes disability), or elects, for personal reasons, to terminate his public employment. On the other hand, under G. L. c. 32B, an employee who is *involuntarily* terminated from public service can continue health insurance coverage, for a limited time and with no monthly contributions from the public employer, only if one (or more) of the enumerated reasons for his termination provided in § 17 applies.

Alignment of the statutes as just described leaves no room for the public employee who is terminated for cause to claim the benefits granted an employee under G. L. c. 32B, § 9. We think the omission of a public employee who has been dismissed for cause from the statutory scheme was intentional by the Legislature. We realize that the word "voluntary," or a word or words of similar meaning, is not present in G. L. c. 32B, § 9, but the design and purpose of the scheme is reasonably evident. The Legislature could not have intended that a public employee who is fired for cause should receive the full level of benefits granted an employee who retires in the usual course or because of the happenstance of an imputed date selected by the board. To conclude otherwise would lead to the illogical result of granting equal treatment to a public employee who voluntarily retires and an employee who is notified that he is likely to be dismissed for cause (and is so dismissed) and races to obtain retirement in an effort to trump the employer's decision to fire him without regard to any negotiated, or agreed on, compromise between the employer's decision to fire and the employee's decision to retire (or resign).[7]

Our conclusion takes into account that the provisions of G. L.

---

[7]The fact that the public employer had notice of the plaintiff's application for accidental disability retirement is of no significance. The role of the teacher's employer and department head in such proceedings, at the time the plaintiff was terminated, is circumscribed by the board's regulations, and is quite limited. See 840 Code Mass. Regs. §§ 10.05, 10.06, 10.07 (1993). It is the board's duty, subject to review, to grant or deny accidental disability retirement benefits. See G. L. c. 32, § 7; 840 Code Mass. Regs. §§ 10.04, 10.13 (1993). In addition, the fact that the plaintiff was terminated for cause also had significance in barring any opportunity for his restoration to active service if his disability changed. See 840 Code Mass. Regs. § 10.18 (1993).

c. 32 governing the requirements for retirement, and the provisions of G. L. c. 32B that we are examining and that concern the continuation of health insurance coverage, are cognate statutes, but statutes that nevertheless consider separate and distinct subjects. General Laws c. 32 provides for mandatory pensions for qualified public employees who have funded the plan over the course of their employment. The right to a pension is lost only in one circumstance — commission of a crime of moral turpitude. General Laws c. 32B is an insurance statute that provides for health insurance benefits for active and qualified retired public employees. Pensions and health insurance coverage are fundamentally different in nature. The former is an earned benefit which cannot be taken away (except for the commission of a crime of moral turpitude). The latter is an unearned benefit, no different in concept from holidays, future sick leave, or other similar benefits, which can be denied, if not otherwise used, when the public employee is terminated for cause.

It is customary in opinions of this sort to refer to canons of statutory construction to support the court's result. To the extent helpful, we refer to those canons which require us to construe related statutes harmoniously, see *Casey* v. *Massachusetts Eleć. Co.*, 392 Mass. 876, 881 (1984), and wherever possible, to implement the actual, or reasonably perceived, intent of the Legislature, see *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984).

2. The other issue argued by the parties concerns the percentage of monthly premium payments which the town is obligated to pay for the plaintiff's continuation of his health insurance coverage. This issue is made academic by our conclusion, and it need not be decided.

3. The judgment is vacated. A new judgment is to be entered which declares that, because of his termination for cause, the plaintiff is not entitled to continue his health insurance coverage under the town's group health insurance policy under G. L. c. 32B, § 9.

*So ordered.*