MASSACHUSETTS NURSES ASSOCIATION *vs.* CAMBRIDGE PUBLIC HEALTH COMMISSION.[1] No. 11-P-1957. October 12, 2012. *Cambridge. Public Health. Nurse. Retirement. Public Employment*, Retirement benefits. *Municipal Corporations*, Board of health, Insurance. *Insurance*, Health and accident, Premiums.

The Cambridge Public Health Commission (Commission) appeals from a judgment that declares the Commission subject to G. L. c. 32B, § 9E, and from a permanent injunction that requires the Commission to pay the same subsidiary health insurance rate for its Massachusetts Nurses Association

---

[1]Doing business as Cambridge Health Alliance.

(MNA) retirees who are members of the Cambridge Retirement System (CRS) as the city of Cambridge (city) does for its own retirees. We vacate the declaratory judgment and permanent injunction, and a judgment shall enter declaring that the Commission is not subject to G. L. c. 32B, § 9E.

1. *Background.* In 1996, the Legislature enacted comprehensive legislation abolishing the Cambridge Department of Health and Hospitals (CDHH) and creating the Commission, "a body politic and corporate" and "public instrumentality" exercising an "essential public function." St. 1996, c. 147 (c. 147), § 4(*a*).[2] The legislation also provided that upon the effective date every employee of the CDHH (including MNA members)

> "shall become an employee of, and shall be transferred to, the [C]ommission without any loss of accrued rights to holidays, sick leave, vacations or other benefits of employment and, by such transfer except as otherwise provided, such employee's seniority, wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances under law or contract shall not be impaired; provided, however, that thereafter each such employee shall perform his duties under the direction, control and supervision of the chief executive officer [of the Commission]."

St. 1996, c. 147, § 6(*f*).

Similarly, every CDHH employee who was a member of the CRS under G. L. c. 32 prior to the merger continued to be a member of the CRS and "subject to the laws applicable thereto." St. 1996, c. 147, § 6(*g*).

Subsequent to the merger, the Commission paid ninety percent of the group health insurance premiums of its retirees, including its MNA member nurses. In 2010, the Commission announced that it intended to reduce from ninety percent to fifty percent its subsidiary health insurance contribution rate for all of its employees retiring after August 31, 2010.[3]

The MNA sought a declaration that under c. 147 the Commission may not adopt a different subsidiary health insurance rate for its retired employees than the city. The Commission moved to dismiss, contending that c. 147 did not require what the MNA sought, and that it is not a political subdivision under G. L. c. 32B and had not "accepted" its terms. A Superior Court judge denied the Commission's motion and granted the MNA the declaratory and injunctive relief sought.

2. *Discussion.* At issue is whether c. 147 requires the Commission to contribute to the health insurance of retiree MNA members who became Commission employees by operation of law in 1996 at the same rate as the city contributes to its retirees. We conclude that the Commission is not required to do so under c. 147 or in conjunction with G. L. c. 32B.[4]

---

[2]The legislation provides that the Commission "shall not be subject to the supervision of any other department, commission, board, bureau, agency or officer of the city except to the extent and in the manner provided by this act." St. 1996, c. 147, § 4(*a*).

[3]The city, which had adopted G. L. c. 32B, § 9E, had been paying ninety percent of its retirees' monthly health insurance premiums. The city has since reduced its contribution to eighty-five percent for individuals retiring on or after October 1, 2009.

[4]Indeed, the Commission is not bound by those statutes to contribute to the group health insurance premiums of its retirees at all.

The provisions of G. L. c. 32, governing pensions, and G. L. c. 32B, concerning health insurance coverage, are "cognate statutes, but statutes that nevertheless consider separate and distinct subjects. . . . Pensions and health insurance coverage are fundamentally different in nature." *Larson* v. *School Comm. of Plymouth*, 430 Mass. 719, 724 (2000). A pension is "an earned benefit which cannot be taken away." *Ibid.* Health insurance coverage is "an unearned benefit, no different in concept from holidays, future sick leave, or other similar benefits." *Ibid.* As an unearned benefit, health insurance, like "wages, hours . . . and . . . other terms and conditions of employment" is subject to mandatory collective bargaining between public employers and public employees. *School Comm. of Medford* v. *Labor Relations Commn.*, 8 Mass. App. Ct. 139, 140 (1979) (citation omitted).

Under G. L. c. 32B, § 9, a retiree bears the full cost of his health insurance premium unless the "municipality" has accepted the more generous provisions of G. L. c. 32B, § 9A or § 9E. See G. L. c. 32B, § 9; *Yeretsky* v. *Attleboro*, 424 Mass. 315, 316 n.4, 317 (1997) (utilizing term "municipality" for all political subdivisions mentioned in G. L. c. 32B). If the municipality accepts § 9A, it pays fifty percent of the retiree's health insurance premium; if it accepts § 9E, then the municipality may elect to pay "a subsidiary or additional rate" greater than fifty percent of health insurance premiums to its retirees. G. L. c. 32B, § 9E, inserted by St. 1968, c. 100, § 2.

We need not resolve whether the Commission is an entity that even has the power to accept G. L. c. 32B because, unlike the city, the Commission has never formally accepted its provisions.[5] Without explicit acceptance, G. L. c. 32B is not applicable to the Commission. See *Jenkin* v. *Medford*, 380 Mass. 124, 126-127 (1980). To the extent the MNA argues that the Commission is bound by the retiree health insurance provisions of G. L. c. 32B, such obligation must arise, if at all, from the provisions of c. 147. We discern nothing in c. 147 that imposes any obligation upon the Commission to provide health insurance benefits to its retirees who were city employees at the time of merger at the same rate as the city. Indeed, the tenor and intent of c. 147 are otherwise.

Simply summarized, the "shall not be impaired" language in c. 147, § 6(*f*), speaks to a bundle of rights, some durable and others not. The pension rights of all CDHH employees who previously were members of the CRS and became employees of the Commission carried over, as the legislation expressly provided so. See c. 147, § 6(*g*). Other rights and benefits, including salaries, health insurance, and other unearned benefits survived only for a defined period of time after the merger and remained the subject of future collective bargaining. The Commission remained free to negotiate these benefits on its own terms. See c. 147, § 6(*a*) (Commission not subject to supervision of city except to extent and manner provided), 6(*f*) (rights and obligations under existing collective bargaining agreements assumed and imposed upon Commission and remain in effect for ninety days after implementation or until new agreement reached).

The declaratory judgment and permanent injunction contained in the order

---

[5]The Commission argues strenuously that it does not fit within any of the listed categories that may accept G. L. c. 32B. Nor does that statute provide a mechanism for a "body politic and corporate" such as the Commission to accept its provisions.

dated July 1, 2011, are vacated,[6] a judgment shall enter declaring that the Commission is not subject to G. L. c. 32B, § 9E, and the complaint is otherwise dismissed.

*So ordered.*

*Andrew Nathanson* for the defendant.
*James F. Lamond* for the plaintiff.

---

[6]Because the declaratory judgment and permanent injunction rest upon an erroneous view of the law, we need not address the Commission's arguments regarding the injunction's overbreadth.