JAMES A. ANDERSON & others[1] vs. BOARD OF SELECTMEN
OF WRENTHAM & another.[2]

Norfolk. November 9, 1989. - January 18, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Municipal Corporations*, Collective bargaining, Town meeting, Selectmen,
Group insurance, Officers and employees.

General Laws, c. 32B, § 7A, a local option statute which permits munici-
palities to contribute more than 50% of their employees' group insur-
ance premiums, did not empower a town meeting to set unilaterally the
town's rate of contribution. [511-514]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 9, 1988.

The case was heard by *William H. Welch*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Paul V. Mulkern, Jr.*, for the defendants.

*Charles J. Maguire, Jr.*, for the plaintiffs.

*Margery E. Williams*, for Massachusetts Teachers Associ-
ation, amicus curiae, submitted a brief.

GREANEY, J. We are asked in this case to interpret
G. L. c. 32B, § 7A, a local option statute which permits
municipalities to contribute more than 50% of their employ-
ees' group insurance premiums.[3] In particular, we must de-

---

[1]Two other Wrentham police officers, the town's fire chief and
superintendent of public works, and the Wrentham Police Association, an
"employee organization" within the meaning of G. L. c. 150E, § 1 (1988
ed.).

[2]The town of Wrentham.

[3]Section 7A (1988 ed.) reads, in pertinent part, as follows:

"A governmental unit which has accepted the provisions of section ten
[of c. 32B] and which accepts the provisions of this section may, as a part

cide whether § 7A empowered the Wrentham town meeting to set unilaterally the town's rate of contribution toward the group health and life insurance provided to the town's employees. We conclude that § 7A did not authorize the town meeting's action and reverse a Superior Court judgment that made a contrary determination.

The background of the case is as follows. On December 14, 1987, a special town meeting was convened in Wrentham. At the meeting, the voters agreed to accept G. L. c. 32B, § 7A.[4] The meeting then voted to pay 99% of the premium of the group life and health insurance for all the town's employees and their dependents and to transfer $150,000 from the town's treasury to pay for the costs of the additional contribution percentage. Approximately two weeks later, the board of selectmen (board) refused to comply with the special town meeting vote to pay 99% of the group life and health insurance premiums, but, rather stated that it would continue to fund only 50% of the insurance premium costs, the minimum amount required by § 7A. The board's refusal to pay the additional 49% represents a net weekly loss to each participating town employee of $14.58 for individual coverage and $34.54 for family coverage.

The plaintiffs, five town employees, and the Wrentham Police Association, commenced an action in the Superior Court seeking a declaration pursuant to G. L. c. 231A, that the town meeting had the authority to set unilaterally the 99%

---

of the total monthly cost of contracts of insurance authorized by sections three and eleven C [of c. 32B], with contributions as required by section seven [of c. 32B], make payment of a subsidiary or additional rate which may be lower or higher than a premium determined by the governmental unit to be paid by the insured, the combination of which shall result in the governmental unit making payment of more, but not less, than fifty per cent of the total monthly cost for such insurance. No governmental unit, however, shall provide different subsidiary or additional rates to any group or class within that unit."

[4]Sometime prior to this meeting, the town had voted to accept G. L. c. 32B in accordance with the provisions of § 10 thereof.

contribution rate.[5] The plaintiffs also sought an order di-
recting the board to implement the town meeting vote on the
rate. After the defendants filed their answer, the plaintiffs
moved for summary judgment pursuant to Mass. R. Civ. P.
56 (a), 365 Mass. 824 (1974), essentially on the undisputed
facts set forth above. A judge in the Superior Court allowed
the plaintiffs' motion, concluding in his memorandum that
"it is the town meeting . . . which sets the rate under
G. L. c. 32B, § 7A." A judgment entered declaring that the
board was obligated to abide by the town meeting vote of
December 14, 1987, that established the contribution rate at
99 %. The judgment also stated that the relief ordered would
operate prospectively with the 99 % contribution rate to be
used by the selectmen in negotiating the next insurance con-
tract or contracts. The plaintiffs filed a motion seeking recon-
sideration of the determination that the new rate should not
apply retroactively. That motion was denied. The defendants
appealed from the entire judgment. The plaintiffs appealed
from the portions of the judgment concerning the retroactiv-
ity of the new contribution rate. We transferred the case to
this court on our own motion.

In controversy is the interpretation of the language in
§ 7A, which refers to "a premium determined by the govern-
mental unit to be paid by the insured." The term
"[g]overnmental unit" is defined in G. L. c. 32B, § 2 (f), as
"any political subdivision of the commonwealth," while
"[p]olitical subdivision" is defined in § 2 (g), as including a
"town." The plaintiffs contend that the reference in § 7A to
the town (as "the governmental unit") can mean only the
town meeting, and thus excludes the board. The plaintiffs
maintain that this conclusion is supported by the separate
definition in § 2 (a) of "[a]ppropriate public authority," as
including the board of selectmen, and the reference in other
parts of G. L. c. 32B to the "appropriate public authority"
(board) as performing other duties with respect to insurance

---

[5]There is no dispute that the town meeting properly accepted § 7A in
accordance with G. L. c. 32B, § 7A (d).

coverages for town employees. See, e.g., G. L. c. 32B, §§ 3, 5, & 8A (1988 ed.). The defendants, on the other hand, argue that the reference to the town in § 7A is meant to be a more general reference to the municipality as a whole, not exclusively to the town meeting. The defendants point to numerous other provisions of G. L. c. 32B (which we need not detail here), that they maintain will have a strained and illogical meaning if "governmental unit" is rigidly construed to mean only "town meeting."[6]

We agree with the defendants' position that the reference in § 7A to the "town" is a general reference to the municipality as a whole and not a specific reference to the town meeting. In substance, § 7A requires that any premium contribution above the 50% minimum be "determined by the governmental unit." That determination requires several distinct steps. First, the town must vote to accept § 7A under the procedure set forth in G. L. c. 32B, § 7A (*d*). Second, a particular contribution percentage must be selected. Third, the town must fund the resulting contribution percentage. It is clear that the town meeting is the only branch of town government empowered to take the first and third steps. See (with respect to the first step) *Jenkin* v. *Medford*, 380 Mass. 124, 126-127 (1980); and (with respect to the third step) G. L. c. 40, § 5 (1988 ed.); G. L. c. 150E, § 7 (1988 ed.). The second step, however, involves the chief executive officer of the town, in this case the board of selectmen, in a mandatory task. Under State law, the contribution percentage to be paid on behalf of unionized employees must be collectively bargained by the employer. See G. L. c. 150E, § 6; *School Comm. of Medford* v. *Labor Relations Comm'n*, 380 Mass. 932 (1980). In that collective bargaining process, the town manager or board of selectmen is the exclusive bargaining representative of a town; the town meeting has no direct

---

[6]A brief has been filed by the Massachusetts Teachers Association as amicus curiae which supports the result sought by the defendants on this issue.

role in the process of negotiations. See G. L. c. 150E, § 1;[7] *Labor Relations Comm'n* v. *Natick*, 369 Mass. 431, 438 (1976); *Weymouth School Comm.*, 9 M.L.C. 1091, 1094 (1982).

The role of the town manager or board of selectmen in the collective bargaining process is an essentially executive function mandated by statute. We have held that, when a board of selectmen is acting in furtherance of a statutory duty, the town meeting may not command or control the board in the exercise of that duty. See *Russell* v. *Canton*, 361 Mass. 727 (1972); *Breault* v. *Auburn*, 303 Mass. 424 (1939); *Lead Lined Iron Pipe Co.* v. *Wakefield*, 223 Mass. 485 (1916). These decisions reflect an application of the more general principle that "[a] municipality can exercise no direction or control over one whose duties have been defined by the Legislature." *Breault* v. *Auburn, supra* at 428, quoting *Daddario* v. *Pittsfield*, 301 Mass. 552, 558 (1938).

We think it follows from these considerations that the essence of good faith bargaining would be thwarted if the parties entered negotiations at a point where the very subject of those negotiations — the insurance premium contribution rate — had already been inflexibly established by the town meeting. Good faith bargaining requires "an open and fair mind as well as a sincere effort to reach a common ground." *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 572 (1983). It would be antithetical to this notion to permit a party to the bargaining process to come to the table with a fait accompli.[8]

---

[7]With respect to unionized school employees, the town's bargaining agent is the school committee or its representative. See G. L. c. 150E, § 1 (1988 ed.).

[8]Furthermore, permitting resort to the town meeting on a subject of mandatory collective bargaining would enable a party to the negotiations to circumvent the bargaining process altogether. If a party was unable to achieve the desired contribution rate through collective bargaining, it could simply put the issue before the town meeting and pack the meeting with voters who supported its position. Such a practice would render the bargaining process an empty formality. "We do not attribute to the Legislature an intention to pass a largely ineffective collective bargaining statute

In a situation where two or more statutes relate to a common subject matter, they should be construed together to constitute an harmonious whole consistent with the legislative purpose. *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). Consistent with this principle, we doubt the Legislature intended in G. L. c. 32B, § 7A, to undermine the well-established collective bargaining requirement that exists in this area.[9] Rather, § 7A, read together with the pertinent provisions of G. L. c. 150E, preserves, as to unionized employees, traditional functions. Negotiation of any contribution rate over 50% is handled by the town manager or board of selectmen. Negotiations would then be followed by a request for an appropriation necessary to fund the costs of any agreed upon contribution rate.[10] By passing on

. . . ." *School Comm. of Newton, supra* at 566. See *Weymouth School Comm.*, 9 M.L.C. 1091, 1095 (1982) (noting that, if a benefit can be obtained through collective bargaining, it would "undermine the purposes of Chapter 150E" to permit an end run around that process).

[9]In fact, the procedure proposed by the plaintiffs in this case has been found to be impermissible on several occasions. In *Town of Provincetown*, 9 M.L.C. 1315 (1982), the town and its employees' union were engaged in collective bargaining for a new contract. The union presented a list of demands, which did not include an increase in the contribution to its members' insurance premiums. After negotiations stalled, the union put before the town meeting a proposal to authorize an additional 30% contribution under § 7A. The town meeting adopted the proposal. Subsequently, the town filed a charge with the Labor Relations Commission alleging that the union had bargained in bad faith in violation of G. L. c. 150E, § 10 (*b*)(1) & (2). Reasoning that "bypassing the employer's or employees' representative on mandatory subjects subverts collective bargaining," 9 M.L.C. at 1320, the commission held that the union's attempt to use § 7A rather than collective bargaining to obtain the additional 30% contribution constituted illegal bad faith bargaining. See *id.* at 1321. Similar results have been reached in *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124 (1989) (unilateral executive action on mandatory subject of collective bargaining prior to impasse constitutes illegal bad faith bargaining); *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557 (1983) (same); *Weymouth School Comm.*, 9 M.L.C. 1091 (1982) (recourse to town's legislative branch to obtain job benefit available through collective bargaining constitutes illegal bad faith bargaining).

[10]The last sentence of the first paragraph of § 7A extends the benefits of any increase in the contribution rate obtained by unionized employees to nonunionized employees. However, a municipal employer may pay

the latter, the town meeting will have its say on the subject. Nothing further argued by the plaintiffs dissuades us from this view.[11] Our conclusion renders it unnecessary to consider the issue raised in the cross appeal by the plaintiffs with respect to the retroactive payment of the benefits voted by the town meeting.

The judgment is reversed. A new judgment is to enter which declares that the defendant board is not obligated to abide by the December 14, 1987, vote of the special town meeting which purported to establish under G. L. c. 32B, § 7A, the town's rate of contribution on group insurance benefits paid the town's employees at 99%.

*So ordered.*

---

a higher premium percentage for certain employees pursuant to G. L. c. 32B, § 15, as appearing in St. 1988, c. 82. See also St. 1989, c. 653, § 37, amending G. L. c. 32B, § 16.

[11]In particular, we reject the plaintiffs' argument that the definition of the term "appropriate public authority" in G. L. c. 32B, § 2 (*a*), settles the issue because the Legislature, if it had intended to include the board of selectmen in the process outlined in § 7A, would have used "appropriate public authority" in place of "governmental unit." The Legislature's choice not to use the term "appropriate public authority" merely indicates that the Legislature did not intend to confer the authority stated in § 7A solely on the board of selectmen. The choice by no means implies exclusion of the board from a proper role in the statutory process. Indeed, if the plaintiffs' argument is accepted, the school committee of a town or its representative would have no role to play establishing § 7A benefits. This result also is not contemplated by G. L. c. 150E.