GAIL E. TWOMEY & others[1] vs. TOWN OF MIDDLEBOROUGH
& others[2] (and a consolidated case[3]).

Plymouth. February 6, 2014. - June 2, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Municipal Corporations,* Home rule, Group insurance, Selectmen, Town
meeting. *Insurance,* Group. *Retirement. Middleborough.*

Discussion of the statutory framework governing a municipality's provision of
   health insurance coverage to their employees. [261-262]
This court concluded that a board of selectmen has the authority, pursuant to
   G. L. c. 32B, § 16, to establish the percentage of the total monthly premium
   for insurance coverage by a health maintenance organization that is to be
   paid by a town's retired employees. [267-271]

CIVIL ACTIONS commenced in the Superior Court Department
on October 30, 2009, and June 1, 2010.

After consolidation, the case was heard by *Jeffrey A. Locke,*
J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Sandra C. Quinn* for Gail E. Twomey & others.

*Thomas J. Burns, III,* for Charles Armanetti & others.

*Leo J. Peloquin* for the defendants.

SPINA, J. In this case, we consider which municipal entity, the
board of selectmen or the town meeting, has the authority to
establish the percentage of the total monthly premium for insur-
ance coverage by a health maintenance organization (HMO)
that is to be paid by a town's retired employees. We conclude

[1] Alice L. Carey, Margaret Y. Chace, Jane E. Guimares, and John R. Hilsa-
beck, Jr. For ease of reference, we refer to these plaintiffs collectively as the
Twomey plaintiffs.

[2] The board of selectmen and the town manager of Middleborough.

[3] Charles Armanetti & others vs. Town of Middleborough & others. For ease
of reference, we refer to these plaintiffs collectively as the Armanetti plaintiffs.

that, pursuant to G. L. c. 32B, § 16, the board of selectmen has such authority.

1. *Statutory framework.* Under the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, municipalities of the Commonwealth may choose to provide health insurance coverage to their employees. See *Cioch* v. *Treasurer of Ludlow*, 449 Mass. 690, 695 (2007). General Laws c. 32B is a so-called "local option" statute that governs the provision of group insurance (medical and certain other coverages) once a municipality has voted to accept the terms of the statute.[4] See *Connors* v. *Boston*, 430 Mass. 31, 37 (1999); *Yeretsky* v. *Attleboro*, 424 Mass. 315, 316-317 (1997). Recognizing that various municipalities may have different priorities, we have said that "a municipality is permitted to adopt 'only those provisions of the statute that best accommodate its needs and budget.' " *Cioch, supra* at 697, quoting *Yeretsky, supra* at 317. Where the municipality at issue is a town, acceptance of many, but not all, of the provisions of G. L. c. 32B is "by vote of the inhabitants at a town meeting." *Yeretsky, supra* at 317 n.5. See G. L. c. 32B, § 10.

When it was enacted, G. L. c. 32B, inserted by St. 1956, c. 730, § 1, authorized municipalities to offer certain employees and their dependents group indemnity health insurance coverage. See G. L. c. 32B, §§ 1, 3. Beginning in 1971, municipalities were given the option of making available to such individuals the services of an HMO by accepting G. L. c. 32B, § 16, inserted by St. 1971, c. 946, § 5.[5] See *Yeretsky*, 424 Mass. at 317 (statutory language governing traditional indemnity group health insurance programs differs from language governing HMOs). Section 16 takes effect in a town when it is accepted "by vote of the board of selectmen." G. L. c. 32B, § 16.

General Laws c. 32B, § 16, states, in pertinent part:

"Upon acceptance of this section . . . , the *appropriate*

---

[4]For the sake of simplicity, we use the term "municipality" in this opinion to refer to the counties, cities, towns, and districts covered by G. L. c. 32B.

[5]General Laws c. 32B, § 16, uses the term "health care organization," as defined in G. L. c. 32B, § 2. Throughout this opinion, we shall use the more common term, "health maintenance organization" (HMO). See *Yeretsky* v. *Attleboro*, 424 Mass. 315, 317 n.6 (1997).

> *public authority* of the governmental unit shall enter into a
> contract . . . to make available the services of [an HMO]
> to certain eligible and retired employees and dependents
> . . . , on a voluntary and optional basis, as it deems to be
> in the best interest of the governmental unit and such
> eligible persons as aforesaid . . . . The *appropriate public
> authority* shall negotiate such a contract of insurance for
> and on behalf and in the name of the governmental unit
> for such a period of time not exceeding five years as it
> may in its discretion, deem to be the most advantageous to
> the governmental unit and the persons insured here-
> under. . . . Eligible persons . . . shall pay a minimum of
> ten percent of the total monthly premium cost or rate for
> coverage under this section, . . . provided . . . that such
> eligible persons shall in no event be required to pay more
> than fifty percent of such total monthly premium cost or
> rate. . . . The *appropriate public authority* may adopt
> such rules and regulations as may be necessary for the
> administration of this section" (emphasis added).

The term "governmental unit" is defined as "any political sub-
division of the [C]ommonwealth." G. L. c. 32B, § 2. With
respect to a town, the "appropriate public authority" that shall
contract for the services of an HMO is "the selectmen." *Id.*

2. *Factual and procedural background.* The facts are taken
from the parties' joint statement of material facts, which we
have supplemented with undisputed facts from the record. The
Twomey plaintiffs are retired public school employees in the
town of Middleborough (town), and each receives a retirement
allowance from the Massachusetts Teachers' Retirement System
(MTRS) pursuant to G. L. c. 32. The Armanetti plaintiffs are
retired town employees, including former teachers, police offi-
cers, fire fighters, and other public servants. Those individuals
who are retired teachers receive a retirement allowance from
the MTRS, and the other retired employees receive an allow-
ance from the Plymouth County Retirement System pursuant to
G. L. c. 32. The Armanetti plaintiffs also include the Middle-
borough Retirees Insurance Group (MRIG), a voluntary associa-
tion of individuals comprised of retired town employees.

The town is a municipal corporation and a political subdivision
of the Commonwealth. It operates under an open town meeting

form of government. The town meeting is a legislative body,[6] and it makes appropriations with respect to the town's budget. Registered voters are authorized to place matters necessitating action on a town meeting warrant pursuant to G. L. c. 39, § 10.[7] A board of selectmen acts as the chief executive officer of the town,[8] and it appoints a town manager to handle the town's affairs. See generally D.A. Randall & D.E. Franklin, Municipal Law and Practice § 6.13 (5th ed. 2006).

The town offers group health insurance coverage to both its active and retired employees pursuant to G. L. c. 32B.[9] One of the insurance plans that the town offers to retirees pursuant to G. L. c. 32B, § 16, is HMO Blue New England (HMO Blue).[10] At all relevant times, the Twomey plaintiffs and the Armanetti plaintiffs were enrolled in this plan. The portion of the premium

---

[6]General Laws c. 4, § 7, Eighteenth B, provides that the term "legislative body," when used in connection with the operation of municipal government, "shall include that agency of the municipal government which is empowered to enact ordinances or by-laws, adopt an annual budget and other spending authorizations, loan orders, bond authorizations and other financial matters and whether styled a city council, board of aldermen, town council, town meeting or by any other title."

[7]The purpose of a town meeting warrant and the articles contained therein is to inform the town's residents of the time and place of a meeting, as well as the subjects that will be discussed and acted on during such meeting. See G. L. c. 39, § 10; Wolf v. Mansfield, 67 Mass. App. Ct. 56, 59 (2006).

[8]General Laws c. 4, § 7, Fifth B, provides that the term "chief executive officer," when used in connection with the operation of municipal government, "shall include the mayor in a city and the board of selectmen in a town unless some other municipal office is designated to be the chief executive officer under the provisions of a local charter."

[9]Because the Twomey plaintiffs and the Armanetti plaintiffs are retired employees of the town, they are not represented by an employee organization under G. L. c. 150E. Prior to their retirements, however, all of the Twomey plaintiffs and some of the Armanetti plaintiffs were members of collective bargaining units. The collective bargaining agreements (CBA) in effect at the time they retired did not include express language about future contributions from the town toward the cost of their health insurance premiums. Nonetheless, when they retired, the town continued to pay the same percentage of their health insurance premiums as it then was paying for active employees under the CBAs. The remaining Armanetti plaintiffs were not members of any collective bargaining unit during the tenure of their employment with the town. When they retired, the town continued to pay the same percentage of their health insurance premiums as it then was paying for nonunionized active employees.

[10]It is not contested that G. L. c. 32B, § 16, was accepted "by vote of the board of selectmen." Id.

cost for which they were responsible was deducted from their retirement allowances and transferred to the town pursuant to G. L. c. 32. At the time each plaintiff retired, the town paid ninety per cent of that retiree's insurance premium for HMO Blue coverage, and the retiree paid the remaining ten per cent.[11]

On April 16, 2009, MRIG submitted a written request to the board of selectmen, in accordance with G. L. c. 39, § 10, to include an article in a town meeting warrant (article 9), pertaining to "freezing" the percentage of the town's contribution to the health insurance premiums for retired employees at ninety per cent.[12] Article 9 was certified for inclusion on the warrant for a special town meeting to be held on May 26, 2009. On May 7, 2009, the warrant was published in the Middleboro Gazette, a local newspaper.

On May 11, 2009, the board of selectmen voted that "the contribution to be put in by retirees be the same as the general government employees, including the end of co-pay reimbursements effective July 1, 2009."[13] The effect of this vote was to increase the portion of the premium paid by retired employees for HMO Blue coverage from ten per cent to twenty per cent. At the time of this vote, the board of selectmen was aware that a special town meeting had been scheduled for May 26, and

---

[11]It appears from the record that sometime during the spring of 2009, the town's contribution to the HMO premiums of *active* employees was reduced to eighty per cent.

[12]The warrant provided notice that the special town meeting would act on the following: "ARTICLE 9. To see if the Town will vote to raise and appropriate and/or transfer a sum of money from the Town's Employee Fringe Benefits, Health and Life Insurance account, Taxation, free cash, another specific available fund or Stabilization Fund, an existing appropriation or account or other available source or by borrowing to continue to contribute the same monetary percentage of the premium of a retired Town of Middleborough employee's contributory group, general or blanket hospital, surgical, dental and other health insurance, that the Town contributed for the retired Town of Middleborough employee at the date of the Town of Middleborough retiree's retirement from the Town of Middleborough, but in no case less than in effect in fiscal year 2007, or act anything thereon." For the 2007 fiscal year, the town continued to pay ninety per cent of the retirees' insurance premiums for HMO coverage, and the retirees paid the remaining ten per cent.

[13]The town meeting has not adopted any charter, bylaw, rule, or ordinance expressly delegating to either the board of selectmen or the town manager the responsibility for determining how the HMO premium should be apportioned between the town and its retired employees.

that article 9 would be considered by registered voters. The town's treasurer proceeded to mail letters to retired employees, including the Twomey plaintiffs and the Armanetti plaintiffs, informing them that the portion of the HMO premium for which they were responsible had increased to twenty per cent of the total premium, effective July 1, 2009.

On May 26, 2009, the special town meeting was held. A quorum was present to conduct business, and article 9 was approved.[14] However, the town never implemented it. Since July 1, 2009, retired employees have been paying twenty per cent of the premium for their HMO coverage in accordance with the vote of the board of selectmen.

On October 30, 2009, the Twomey plaintiffs filed an action in the Superior Court against the town, the board of selectmen, and the town manager (collectively, the defendants), challenging their refusal to comply with the vote of the May 26, 2009, special town meeting to pay ninety per cent of the HMO premiums for retired employees. Count I of the second amended complaint, filed on July 15, 2010, sought a declaratory judgment pursuant to G. L. c. 231A, stating that the proper and lawful vote of the special town meeting could not be set aside by a vote of the board of selectmen. Count II of the second amended complaint requested relief in the nature of mandamus. The Twomey plaintiffs sought an order, retroactive to July 1, 2009, requiring the defendants to implement the vote of the special town meeting and to make the Twomey plaintiffs whole for the premium payments that they had made in excess of the amount authorized by the special town meeting.

On June 1, 2010, the Armanetti plaintiffs filed a complaint for declaratory relief pursuant to G. L. c. 231A in the Superior Court. They presented the same claim that had been raised by the Twomey plaintiffs, namely, that the board of selectmen did not have the authority to ignore the vote of the special town meeting and raise the HMO premium contribution percentage for retired town employees from ten per cent to twenty per cent.[15] The Twomey plaintiffs and the defendants subsequently

---

[14]Prior to the vote at the special town meeting, town counsel advised voters that article 9 only could serve as a recommendation to the board of selectmen regarding the town's contribution to the retirees' health insurance premiums.

[15]The action filed by the Armanetti plaintiffs raised several additional grounds

filed a motion pursuant to Mass. R. Civ. P. 42 (a), as amended, 423 Mass. 1402 (1996), to consolidate the two civil actions for the purpose of deciding the town meeting claims. The Armanetti plaintiffs opposed the motion. Nonetheless, on January 5, 2011, the motion was allowed.

On June 3, 2011, the Twomey plaintiffs and the Armanetti plaintiffs filed separate motions for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974).[16] They asserted that the May 26, 2009, vote of the special town meeting was lawful, that the town meeting acted within its authority to freeze the HMO premium contribution rate for the town's retired employees at ten per cent, and that the defendants did not have the discretion to refuse to implement the special town meeting vote. The defendants filed a cross motion for summary judgment. They argued that the board of selectmen had the legal authority to determine the premium apportionment for town retirees pursuant to its May 11, 2009, vote.

Following a hearing, a judge allowed the defendants' motion and denied the motions filed by the Twomey plaintiffs and the Armanetti plaintiffs. The judge ordered that a declaration enter stating that under G. L. c. 32B, § 16, the board of selectmen had the authority to determine the health insurance premium contribution rate for town retirees, and the town meeting could not override this decision. Therefore, the defendants were not required to comply with the May 26, 2009, vote of the special town meeting that approved article 9 because the board of selectmen's May 11, 2009, vote controlled the matter. The judge denied the Twomey plaintiffs' request for an order in the nature of mandamus. Judgment entered for the defendants.[17] The Twomey plaintiffs and the Armanetti plaintiffs appealed the judge's

for declaratory relief. Because those grounds are not relevant to these proceedings, we do not discuss them further. See note 17, *infra*.

[16]The Armanetti plaintiffs only moved for summary judgment on Count I of their complaint for declaratory relief, which pertained to the town meeting claim.

[17]Summary judgment against the Armanetti plaintiffs was inadvertently entered with respect to all of the claims raised in their complaint, rather than solely with respect to their town meeting claim. In order to preserve their other claims, they filed a motion for entry of a separate and final judgment pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), that would dispose only of their town meeting claim. The Armanetti plaintiffs subsequently

decision, the case was entered in the Appeals Court, and we transferred it to this court on our own motion.

3. *Standard of review.* Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). We review a decision to grant summary judgment de novo. See *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003). "In a case like this one where both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment is to enter." *Albahari* v. *Zoning Bd. of Appeals of Brewster*, 76 Mass. App. Ct. 245, 248 n.4 (2010). See *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66, 70 (2007).

4. *Discussion.* The thrust of the arguments by the Twomey plaintiffs and the Armanetti plaintiffs is that G. L. c. 32B, § 16, does not confer authority on the board of selectmen to set the HMO premium contribution rate that is to be paid by the town's retired employees. Rather, they contend that it is solely the province of the town meeting, which serves as the town's legislative body, to act on matters of municipal finance. These matters include establishing the HMO contribution rate for retirees at ninety per cent, not eighty per cent. In the view of the Twomey plaintiffs and the Armanetti plaintiffs, because the Legislature did not expressly delegate this responsibility to the board of selectmen, that entity functions exclusively to carry out those measures enacted by the town meeting. We disagree.

Our analysis of G. L. c. 32B, § 16, is guided by the familiar principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accom-

decided to dismiss the remainder of their claims, with the assent of the defendants, and to pursue an appeal only on the town meeting claim. Consequently, the Armanetti plaintiffs, the Twomey plaintiffs, and the defendants filed a joint motion for entry of final judgment on Count I of the Armanetti plaintiffs' complaint and for dismissal of all of the remaining counts in that complaint. On July 31, 2012, a judge allowed the joint motion.

plished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001), and cases cited. Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985); *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942).

The broad purpose of G. L. c. 32B is to allow municipalities to provide group insurance (medical and certain other coverages) to their active and retired employees and their employees' dependents. G. L. c. 32B, § 1. See *Yeretsky*, 424 Mass. at 316. Where, as here, the municipality at issue is a town, G. L. c. 32B, § 16, explicitly confers authority on the board of selectmen to make available "to certain eligible and retired employees and dependents" the services of an HMO. G. L. c. 32B, § 16. This particular statutory section takes effect upon its acceptance by the board of selectmen, thereby rendering its provisions applicable to the town. *Id.* It is the board of selectmen that is empowered to negotiate and enter into a contract for health insurance that the board deems to be "in the best interest of" and "the most advantageous to" the town and the persons insured thereunder. *Id.* Moreover, it is the board of selectmen that is authorized to adopt rules and regulations that may be necessary to the administration of § 16. *Id.* The plain language of this statutory section indicates that once § 16 has been accepted by a town, the board of selectmen is the municipal entity designated by the Legislature to implement its various provisions. One of those provisions states that eligible persons shall pay between ten per cent and fifty per cent of the total monthly premium for HMO coverage. *Id.*

We recognize, and the parties acknowledge, that G. L. c. 32B, § 16, is silent with respect to exactly how the total monthly premium should be apportioned between a town and its retired employees. Nonetheless, given the broad authority conferred on the board of selectmen by the Legislature with respect to the

implementation of § 16, and given the complete absence of any reference to the town meeting in that same statutory section, it is reasonable to conclude that it is the province of the board of selectmen to determine what portion of the total monthly premium for HMO coverage should be borne by the town's retired employees. Had the Legislature intended to confer on the town meeting the authority to set HMO premium contribution rates for town retirees, it would have included language to that effect in § 16. See, e.g., G. L. c. 32B, § 9A (town shall contribute one-half of premium to be paid by retired employees for group indemnity insurance when approved by vote of town at town meeting). We will not read into a statute, here § 16, a provision that the Legislature did not put there. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999).

We find instructive the 2011 amendments to G. L. c. 32B wherein the Legislature authorized municipalities to implement health insurance plan design changes outside the collective bargaining process. St. 2011, c. 69, § 3. As part of this reform, the Legislature prohibited a "public authority" — with regard to a town, the board of selectmen — from increasing before July 1, 2014, "the percentage contributed by retirees . . . to their health insurance premiums *from the percentage that was approved by the public authority* prior to and in effect on July 1, 2011" (emphasis added). G. L. c. 32B, § 22 (*e*). See G. L. c. 32B, § 2 (defining "[a]ppropriate public authority"). Although the 2011 amendments to G. L. c. 32B are not applicable to the actions filed by the Twomey plaintiffs and the Armanetti plaintiffs, the language of § 22 (*e*) provides important insight into the Legislature's understanding of the operation of § 16. The Legislature is presumed to be aware of existing statutes when it enacts a new one. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994). The language of G. L. c. 32B, § 22 (*e*), clearly reflects the Legislature's understanding that, in a town, the board of selectmen determines the HMO premium contribution rate for retired employees.

Generally speaking, "[a] municipality can exercise no direction or control over one whose duties have been defined by the Legislature." *Breault* v. *Auburn*, 303 Mass. 424, 428 (1939), quoting *Daddario* v. *Pittsfield*, 301 Mass. 552, 558 (1938).

More specifically, a town meeting cannot exercise authority over a board of selectmen when the board is acting in furtherance of a statutory duty. See *Anderson* v. *Selectmen of Wrentham*, 406 Mass. 508, 512 (1990) (board of selectmen not bound by town meeting vote to set rate of contribution for group insurance provided to town's employees under G. L. c. 32B, § 7A);[18] *Russell* v. *Canton*, 361 Mass. 727, 730-731 (1972) (where Legislature delegated to board of selectmen right to take land by eminent domain, town meeting could authorize but not command such taking). Here, once the board of selectmen accepted the provisions of G. L. c. 32B, § 16, it had a statutory duty to provide HMO coverage to retired town employees, among others, in a manner that was in the best interest of and most advantageous to both the town and its insureds. See G. L. c. 32B, § 16. An integral part of this duty was the apportionment of the total monthly premium for HMO coverage between the town and its retired employees in a fiscally responsible way. The town meeting could not usurp the authority given to the board of selectmen by the Legislature in § 16.

---

[18]In *Anderson* v. *Selectmen of Wrentham*, 406 Mass. 508, 511 (1990), we said that the selection of a contribution percentage to be paid on behalf of unionized town employees for their group insurance coverage had to be collectively bargained by the employer. See G. L. c. 150E, § 6. Because the board of selectmen was the chief executive officer of the town, its duty to collectively bargain the contribution percentage was a function mandated by statute. See *Anderson*, *supra* at 511-512. As a consequence, the town meeting had no direct role in the collective bargaining process. See *id.* We noted that "permitting resort to the town meeting on a subject of mandatory collective bargaining would enable a party to the negotiations to circumvent the bargaining process altogether[,] . . . put the issue before the town meeting[,] and pack the meeting with voters who supported its position." *Id.* at 512 n.8. The present case, unlike *Anderson*, does not involve collective bargaining. Nonetheless, the board of selectmen is acting in furtherance of its statutory duty under G. L. c. 32B, § 16, when it makes available to its retired employees the services of an HMO. Part and parcel of that duty is the establishment of an appropriate contribution percentage. One of the Legislature's purposes in enacting § 16 was "to enable government employers to gain control over health care costs." *Yeretsky*, 424 Mass. at 321. The concern that was articulated nearly twenty-five years ago in *Anderson* regarding the consequences of having the town meeting decide insurance contribution percentages takes on even greater significance today when the fiscal burdens imposed on municipalities by retiree health care benefits continue to soar. In accordance with the language and intent of G. L. c. 32B, § 16, it is the province of the board of selectmen to ensure that the town's HMO program is administered in a fiscally responsible manner.

In contrast to the comprehensive authority of the board of selectmen to effectuate the provisions of G. L. c. 32B, § 16, the role of the town meeting is substantially more limited. It is undisputed that pursuant to G. L. c. 40, § 5, "[a] town may at any town meeting appropriate money for the exercise of any of its corporate powers." However, to the extent that the town meeting fails to appropriate the funds necessary to implement the provisions of G. L. c. 32B, the board of selectmen shall certify to the board of assessors the cost to the town of carrying out the provisions of c. 32B, and the board of assessors "shall include the amount so certified in the determination of the tax rate of that year." G. L. c. 32B, § 3. Ultimately, it is the board of selectmen that ensures the appropriation of funds to pay for the town's contribution to HMO coverage for retirees, emphasizing the board's authority over all aspects of HMO coverage for town employees.

5. *Conclusion.* The town's board of selectmen has the authority, pursuant to G. L. c. 32B, § 16, to establish the percentage of the total monthly premium for HMO coverage that is to be paid by the town's retired employees. Accordingly, the declaratory judgment entered in the Superior Court is affirmed.

*So ordered.*