NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11620

CITY OF SOMERVILLE & another[1] vs. COMMONWEALTH EMPLOYMENT RELATIONS BOARD & others.[2]

Suffolk.    November 3, 2014. - February 3, 2015.

Present: Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.

School and School Committee, Retirement benefits, Group insurance, Collective bargaining. Municipal Corporations, Group insurance, Collective bargaining. Retirement. Public Employment, Retirement benefits, Collective bargaining. Insurance, Group.

Appeal from a decision of the Division of Labor Relations.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Matthew J. Buckley, Assistant City Solicitor, for the plaintiffs.
T. Jane Gabriel for the defendant.
Laurie R. Houle, Ira Fader, Colin R. Confoey, & Jason Powalisz for the interveners, submitted a brief.

---

[1] School Committee of Somerville.

[2] Somerville Teachers Association, Somerville Police Superior Officers Association, Somerville Administrators Association, and Somerville Municipal Employees Association, interveners.

SPINA, J.  At issue in this case is whether the city of
Somerville (city) and the school committee of Somerville (school
committee) violated G. L. c. 150E, § 10 (a) (5), and,
derivatively, G. L. c. 150E, § 10 (a) (1), when the city
unilaterally reduced its percentage contribution to retired
employees' health insurance premiums without engaging in
collective bargaining over the matter with current employees.[3]
We conclude that the city and the school committee did not
violate these statutory provisions.  Accordingly, we reverse the
decision of the Commonwealth Employment Relations Board (board),
which reached a contrary conclusion.

1.  Statutory framework.  Our resolution of the present
dispute is based on the interplay between G. L. c. 150E and
G. L. c. 32B.  General Laws c. 150E, § 2, protects the rights of
public employees to self-organization and collective bargaining.
Pursuant to G. L. c. 150E, § 6, "[t]he employer and the
exclusive representative . . . shall negotiate in good faith
with respect to wages, hours, standards [of] productivity and
performance, and any other terms and conditions of employment
. . . ."  General Laws c. 150E, § 10, states, in relevant part:

> "(a) It shall be a prohibited practice for a public
> employer or its designated representative to:

---

[3] A municipality and a school committee are a single entity
for purposes of collective bargaining.  See City of Malden, 23
M.L.C. 181, 183-184 (1997).

"(1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

". . .

"(5) Refuse to bargain collectively in good faith with the exclusive representative as required in section six
. . . ."

"Under the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, municipalities of the Commonwealth may choose to provide health insurance coverage to their employees." Twomey v. Middleborough, 468 Mass. 260, 261 (2014). See Cioch v. Treasurer of Ludlow, 449 Mass. 690, 695 (2007). General Laws c. 32B is a so-called "local option" statute that governs the provision of health insurance to active and retired employees of a municipality once that entity has voted to accept the terms of the statute.[4] See Twomey v. Middleborough, supra; Yeretsky v. Attleboro, 424 Mass. 315, 316 (1997). See generally D.A. Randall & D.E. Franklin, Municipal Law and Practice § 10.25 (5th ed. 2006 & Supp. 2014). When enacted, see St. 1956, c. 730, § 1, G. L. c. 32B, §§ 1 and 3, authorized municipalities to offer certain eligible persons and their dependents group indemnity health insurance coverage. Beginning in 1971, municipalities were given the option of making available to such individuals the services of a health

---

[4] For the sake of simplicity, we use the term "municipality" in this opinion to refer to the counties, cities, towns, and districts covered by G. L. c. 32B.

maintenance organization (HMO) by accepting G. L. c. 32B, § 16, inserted by St. 1971, c. 946, § 5.

Pursuant to G. L. c. 32B, § 9, retirees bear the full cost of their health insurance premiums unless a municipality has accepted the more generous provisions of G. L. c. 32B, § 9A or § 9E. If a municipality accepts G. L. c. 32B, § 9A, then it may elect to pay fifty per cent of a retiree's premium for health insurance coverage. If a municipality accepts G. L. c. 32B, § 9E, then it may elect to pay "a subsidiary or additional rate" greater than fifty per cent of a retiree's health insurance premium.

2. Factual and procedural background. We summarize the relevant facts as stipulated by the parties in lieu of a hearing before the board. The city is a public employer within the meaning of G. L. c. 150E, § 1. The school committee is the collective bargaining agent of the city for the purpose of dealing with school employees. The Somerville Teachers Association, Somerville Police Superior Officers Association, Somerville Administrators Association, and Somerville Municipal Employees Association (collectively, the unions) are employee organizations within the meaning of G. L. c. 150E, § 1,[5] and they

_____

[5] General Laws c. 150E, § 1, defines an "[e]mployee organization" as "any lawful association, organization, federation, council, or labor union, the membership of which includes public employees, and assists its members to improve their wages, hours, and conditions of employment."

are the exclusive bargaining representatives for various individuals employed by the school committee and the city.

In 1979, the city accepted G. L. c. 32B, § 9E, by a vote of the board of aldermen, thereby authorizing the city to pay more than fifty per cent of a retired employee's monthly premium for an indemnity health insurance plan. From that point forward until August 1, 2009, the city contributed ninety-nine per cent of the premium for a retired employee's health insurance coverage under the indemnity plan offered by the city. Retired employees contributed the remaining one per cent of the premium. In addition, the city offered active and retired employees health insurance coverage through several HMOs. The city paid fixed percentages of the total premium costs, which varied between eighty and ninety per cent, depending on the particular plan. Employees and retirees paid the remainder of the premium costs.

On or about July 1, 2009, the city had approximately 1,262 retirees who were participating in the city's group health insurance plans. The majority of these individuals had retired from positions in the unions' bargaining units. Effective August 1, 2009, the city decreased the percentage of its contribution for retired employees' health insurance coverage under the indemnity plan from ninety-nine per cent to sixty per cent, and it decreased the percentage of its contribution for

retired employees' health insurance coverage under all other insurance plans to seventy-five per cent. These changes were approved by the board of aldermen after a properly noticed public hearing at which the new rates were proposed by the mayor.[6]

Neither the city nor the school committee provided the unions with notice of or an opportunity to bargain over the decision to change contribution rates. None of the collective bargaining agreements between the city and the various bargaining units addressed the contribution rates for retired employees' health insurance coverage, and such rates had never been a subject of negotiation between the city and the bargaining units. At all material times, the city has maintained that the authority to set the contribution rates for retirees' health insurance coverage is vested exclusively with the board of aldermen and the mayor, and that such contribution rates are not a mandatory subject of bargaining with current employees.

On September 10, 2009, the Somerville Teachers Association filed two prohibited practice charges with the division of labor

---

[6] According to the city of Somerville (city), the board of aldermen voted to amend the city's 1979 acceptance of G. L. c. 32B, § 9E, thereby allowing the city to reduce its health insurance contribution rates for retirees.

relations (division).[7]  It alleged that the city and, separately, the school committee had violated G. L. c. 150E, § 10 (a) (5), and, derivatively, G. L. c. 150E, § 10 (a) (1), by "failing to provide notice and an opportunity to bargain over the future benefits [on retirement] of active employees when the City announced at the meeting of the Board of Aldermen, on May 28, 2009 that effective August 1, 2009 the percentage contribution rate for all retirees would be increased."[8]  Based on essentially the same grounds, the Somerville Police Superior Officers Association filed a prohibited practice charge with the division on December 21, 2009; the Somerville Administrators Association filed two prohibited practice charges with the division on January 26, 2010;[9] and the Somerville Municipal Employees Association filed a prohibited practice charge with the division on April 13, 2010.  The division investigated the allegations and found probable cause to believe that statutory violations had occurred.  The division issued complaints with respect to all six matters, and, on July 30, 2010, they were consolidated

_____

[7] The division of labor relations is now the Department of Labor Relations.  See St. 2011, c. 3, § 36.

[8] In its prohibited practice charge against the city, the Somerville Teachers Association (association) also alleged that the city had failed to provide certain health insurance information that was reasonable and necessary for the association to fulfil its obligations under the law.  It subsequently withdrew this claim on February 18, 2011.

[9] One prohibited practice charge was against the city, and the other was against the school committee of Somerville.

for hearing.  Pursuant to G. L. c. 150E, § 11 (f), the parties petitioned to have the consolidated complaints heard by the board in the first instance (rather than by a hearing officer),[10] and the request was granted.  The parties then stipulated to the facts.

By decision dated October 19, 2011, the board concluded that the city and the school committee had failed to satisfy their statutory bargaining obligations before unilaterally reducing contributions for retired employees' health insurance premiums.  In the board's view, health insurance contributions for municipal retirees are a mandatory subject of bargaining. The board rejected the city's claims that current employees have no right to bargain over such contributions made on behalf of retirees, and that, pursuant to G. L. c. 32B, health insurance rates for retirees must be established through the local governmental process, not the collective bargaining process.

The board ordered the city and the school committee to cease and desist from failing and refusing to bargain collectively in good faith with the unions over changes to future retirees' health insurance contribution rates.  Further, the board ordered the city and the school committee to restore the terms of the retirement health insurance benefit that was in

---

[10] The Commonwealth Employment Relations Board (board) is the body within the division of labor relations that is charged with reviewing orders from investigators and issuing decisions. See G. L. c. 23, § 9R; G. L. c. 150E, § 11.

effect prior to August 1, 2009, for the unions' bargaining unit members who were active employees before that date and retired thereafter.  In addition, the board ordered the city and the school committee to make whole those bargaining unit members who retired after August 1, 2009, for any losses they may have suffered as a result of the unilateral change in retirement health insurance contribution rates, plus interest.  The city and the school committee appealed the board's decision, the case was entered in the Appeals Court, and we transferred it to this court on our own motion.

3.  Standard of review.  We review the board's decision in accordance with the standards set forth in G. L. c. 30A, § 14 (7), governing appeals from final administrative agency decisions.  See G. L. c. 150E, § 11 (i).  See also Worcester v. Labor Relations Comm'n, 438 Mass. 177, 180 (2002).  The board's decision will be set aside only if it is "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."  G. L. c. 30A, § 14 (7) (g).  We defer to the board's specialized knowledge and expertise.  See Worcester v. Labor Relations Comm'n, supra.  However, the duty of statutory interpretation rests ultimately with the courts.  See Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006), citing Cleary v. Cardullo's, Inc., 347 Mass. 337, 343-344 (1964).

4. <u>Discussion</u>. The thrust of the arguments made by the city and the school committee is that current public employees do not have the right to bargain collectively over the issue of health insurance contribution rates for retirees. They contend that, pursuant to G. L. c. 32B, such contribution rates are to be determined solely by the local government. In their view, a contrary conclusion would give the unions veto power over decisions made by a municipality acting in accordance with its statutory authority. Therefore, they continue, neither the city nor the school committee violated G. L. c. 150E, § 10 (<u>a</u>) (5), and, derivatively, G. L. c. 150E, § 10 (<u>a</u>) (1), when the city unilaterally reduced its percentage contributions to retirees' health insurance premiums. We agree.

When Congress enacted the National Labor Relations Act in 1935, it exempted public employers -- States and their political subdivisions -- from the obligation to engage in collective bargaining. See 29 U.S.C. § 152(2) (2012). See also <u>Brookfield</u> v. <u>Labor Relations Comm'n</u>, 443 Mass. 315, 326 n.5 (2005). States and their political subdivisions were "free to regulate their labor relationships with their public employees." <u>Davenport</u> v. <u>Washington Educ. Ass'n</u>, 551 U.S. 177, 181 (2007). However, as was the case in most States, public employees in the Commonwealth "had virtually none of the rights that had been widely guaranteed since the nineteen thirties to employees in

private business to organize and bargain collectively and to be protected in the associated activities of asserting and negotiating grievances."  Dedham v. Labor Relations Comm'n, 365 Mass. 392, 396 (1974).  "[T]raditional hostility to organizational rights on the part of public employees gradually diminished in the post-war period, and in 1958 Massachusetts was among the first States . . . to afford a measure of recognition to those rights."  Id. at 397.  See St. 1958, c. 460, inserting G. L. c. 149, § 178D.  See also St. 1964, c. 637, inserting G. L. c. 149, § 178F; St. 1965, c. 763, § 2, inserting G. L. c. 149, §§ 178G-178N.  In 1973, the public sector collective bargaining law, G. L. c. 149, §§ 178D, 178F-178N, was repealed and replaced with G. L. c. 150E, see St. 1973, c. 1078, §§ 1, 2, as comprehensive legislation designed to provide organizational and collective bargaining rights to public employees.[11]  See

---

[11] Historically speaking, "the subjects of public sector collective bargaining are more restricted than those in private sector labor relations."  School Comm. of Boston v. Boston Teachers Union, Local 66, 378 Mass. 65, 70 (1979).  See, e.g., G. L. c. 150E, § 9A (a) (prohibiting public employees and their organizations from engaging in strikes).  "'Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither' may limit the ability of a public employer . . . to bind itself to a given contractual provision or to delegate to an arbitrator the power to bind it."  School Comm. of Boston v. Boston Teachers Union, Local 66, supra, quoting School Comm. of Hanover v. Curry, 369 Mass. 683, 685 (1976).  "While this principle may be raised in varied contexts . . . the analysis to be utilized is essentially the same in all instances:  whether the ingredient of public policy in the issue subject to dispute is so comparatively heavy that collective bargaining . . . on the subject is, as a matter of

Labor Relations Comm'n v. Boston Teachers Union, Local 66, 374
Mass. 79, 93-95 (1977); Gallagher v. Metropolitan Dist. Comm'n,
371 Mass. 691, 693 (1977).  Thus, the scope of matters for
negotiation has been defined, albeit somewhat broadly, by the
Legislature.

General Laws c. 150E, § 6, provides that the public
employer and the employee organization "shall negotiate in good
faith with respect to wages, hours, standards [of] productivity
and performance, and any other terms and conditions of
employment."  These matters, subject to limited exceptions, are
deemed to be mandatory subjects of bargaining.[12]  See Local 1652,
Int'l Ass'n of Firefighters v. Framingham, 442 Mass. 463, 467
(2004).  See also Worcester v. Labor Relations Comm'n, 438 Mass.
at 180-181 (certain types of managerial decisions must, as
matter of policy, be reserved for public employer's discretion).
The failure of a public employer to negotiate in good faith over

_____

law, to be denied effect."  Id. at 70-71.  "Underlying this
development is the belief that, unless the bargaining
relationship is carefully regulated, giving public employees the
collective power to negotiate labor contracts poses the
substantial danger of distorting the normal political process
for controlling public policy."  Id. at 71.

[12] It has been observed by appellate courts that "[a]ny
attempt to define with precision and certainty the subjects
about which bargaining is mandated by [c.] 150E is doomed to
failure."  Lynn v. Labor Relations Comm'n, 43 Mass. App. Ct.
172, 177 (1997), quoting Greenbaum, The Scope of Mandatory
Bargaining Under Massachusetts Public Sector Labor Relations
Law, 72 Mass. L. Rev. 102, 102 (1987).  See Local 2071, Int'l
Ass'n of Firefighters v. Bellingham, 67 Mass. App. Ct. 502, 522
(2006) (Mills, J., dissenting), S.C., 450 Mass. 1011 (2007).

mandatory subjects of bargaining is a prohibited practice.  See G. L. c. 150E, § 10 (a) (5).  See also Commonwealth v. Labor Relations Comm'n, 404 Mass. 124, 127 (1989) ("A public employer has a duty to bargain in good faith and, short of impasse, it may not unilaterally implement changes to a mandatory subject of bargaining without negotiation"); School Comm. of Newton v. Labor Relations Comm'n, 388 Mass. 557, 572 (1983).  The commission of a prohibited practice is remediable through the enforcement procedures set forth in G. L. c. 150E, § 11.

The issue here is whether the city's contribution rate for retired employees' health insurance coverage is a mandatory subject of bargaining such that its unilateral reduction constitutes a prohibited practice in violation of G. L. c. 150E, § 10 (a) (5).  As a general proposition, health insurance coverage for public employees is "an unearned benefit, no different in concept from holidays, future sick leave, or other similar benefits."  Larson v. School Comm. of Plymouth, 430 Mass. 719, 724 (2000).  "As an unearned benefit, health insurance, like 'wages, hours . . . and . . . other terms and conditions of employment' is subject to mandatory collective bargaining between public employers and public employees." Massachusetts Nurses Ass'n v. Cambridge Pub. Health Comm'n, 82 Mass. App. Ct. 909, 911 (2012), quoting School Comm. of Medford v. Labor Relations Comm'n, 8 Mass. App. Ct. 139, 140 (1979),

S.C., 380 Mass. 932 (1980). See Anderson v. Selectmen of Wrentham, 406 Mass. 508, 511 (1990) (municipality's contribution to unionized employees' group health insurance premiums is mandatory subject of collective bargaining). The language of G. L. c. 150E, § 6, governs the terms and conditions of the public employee's existing employment. It goes without saying that a retiree cannot bargain over the percentage contributions made by a municipality to the retiree's health insurance premiums, given that the retiree is no longer employed. With respect to current employees, a municipality's contributions to the health insurance premiums of retirees is not a term or condition of employment that is subject to mandatory collective bargaining where the Legislature expressly has conferred authority over the provision of such a benefit on the municipality.

The Legislature, by way of G. L. c. 32B, § 9, has stated that retirees "shall pay the full premium cost" of their health insurance, subject to the provisions of either G. L. c. 32B, § 9A, or G. L. c. 32B, § 9E, which, if accepted by a municipality, permits the municipality to pay a portion of the retirees' premiums. The authority conferred on a municipality to decide whether and how much to contribute to the monthly health insurance premiums of retired employees (within defined statutory percentages) would be wholly undermined by an

obligation to collectively bargain the matter.  See, e.g., Somerville v. Somerville Mun. Employees Ass'n, 451 Mass. 493, 494 (2008) (explicit legislative directive of G. L. c. 115, § 10, that city's director of veterans' services "shall be appointed . . . by the mayor, with the approval of the city council," precluded challenged appointment from being proper subject of collective bargaining); National Ass'n of Gov't Employees v. Commonwealth, 419 Mass. 448, 453, cert. denied, 515 U.S. 1161 (1995) (where Legislature reserved for itself in G. L. c. 32A, § 8, power to change percentage of Commonwealth's agreed-to contribution to employees' health insurance premiums, such reserved power could not be overridden by collective bargaining); Watertown Firefighters, Local 1347, I.A.F.F. v. Watertown, 376 Mass. 706, 714 (1978) (characterization of matter as term or condition of employment does not require its submission to collective bargaining if to do so will "defeat[] a declared legislative purpose").  See generally Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983), quoting Hudson Water Co. v. McCarter, 209 U.S. 349, 357 (1908) ("One whose rights . . . are subject to [S]tate restriction, cannot remove them from the power of the State by making a contract about them").

Except as provided in G. L. c. 150E, § 7 (d), which we shall discuss next, "[t]here is no obligation to engage in

collective bargaining as to matters controlled entirely by statute." Lynn v. Labor Relations Comm'n, 43 Mass. App. Ct. 172, 183 (1997).[13] See Commonwealth v. Labor Relations Comm'n, 404 Mass. at 126; National Ass'n of Gov't Employees, Local R1-162 v. Labor Relations Comm'n, 17 Mass. App. Ct. 542, 544 (1984). Here, current public employees cannot bargain over how the city should exercise the authority conferred on it by G. L. c. 32B, § 9E, because such bargaining effectively would negate the Legislature's purpose in entrusting the matter to the city. See Lynn v. Labor Relations Comm'n, supra at 184. Cf. Twomey v. Middleborough, 468 Mass. at 271 (board of selectmen has statutory authority to establish percentage of total monthly premium for HMO coverage that is to be paid by town's retired employees); Yeretsky v. Attleboro, 424 Mass. at 323-324 (municipal contribution rate for HMO premiums for retired nonunionized employees determined at local government level). In our view, the Legislature conferred authority on municipalities to decide whether and how much to contribute to

_____

[13] In Lynn v. Labor Relations Comm'n, 43 Mass. App. Ct. at 182, the Appeals Court cogently explained: "In the range of cases where the governmental employer acts pursuant to broad, general management powers, the danger is presented, as pointed out in School Comm. of Newton v. Labor Relations Comm'n, 388 Mass. [557,] 564-566 [(1983)], that to recognize the statutory authority as exclusive would substantially undermine the purpose of G. L. c. 150E, § 6, to provide for meaningful collective bargaining as a general rule with respect to compensation and other terms and conditions of employment. That danger simply is not present when the governmental employer acts pursuant to a specific, narrow statutory mandate."

retirees' health insurance premiums in recognition of the fact that, as public employers, they must balance the needs of their retired workers with the burdens of safeguarding their own fiscal health, thereby ensuring their ability to provide services for all of their citizens.

If we were to conclude that the city's percentage contribution to retirees' health insurance premiums is a mandatory subject of bargaining, we would have to confront the import of the so-called "conflicts" statute, G. L. c. 150E, § 7 (d). See Adams v. Boston, 461 Mass. 602, 607-608 (2012). General Laws c. 150E, § 7 (d), provides that, with respect to matters within the scope of negotiations under G. L. c. 150E, § 6, the terms of a collective bargaining agreement prevail over contrary terms in certain enumerated statutes. See Adams v. Boston, supra; Chief Justice for Admin. & Mgt. of the Trial Court v. Office & Professional Employees Int'l Union, Local 6, 441 Mass. 620, 625-626 (2004). Generally speaking, those enumerated statutes "contain specific mandates regarding terms and conditions of employment of public employees." Adams v. Boston, supra at 607 n.11. See G. L. c. 150E, § 7 (d); School Comm. of Newton v. Labor Relations Comm'n, 388 Mass. at 566. General Laws c. 32B, § 9E, is not among the enumerated statutes. It is well established that "statutes not specifically enumerated in § 7 (d) will prevail over contrary terms in

collective bargaining agreements." Commonwealth v. Labor Relations Comm'n, 404 Mass. at 126. See Chief Justice for Admin. & Mgt. of the Trial Court v. Office & Professional Employees Int'l Union, Local 6, supra; School Comm. of Natick v. Education Ass'n of Natick, 423 Mass. 34, 39 (1996). "There is no duty to bargain over the specific requirements of such statutes." Commonwealth v. Labor Relations Comm'n, supra. As pertinent to the present case, even if the city's contribution to retirees' health insurance premiums was deemed to be a mandatory subject of collective bargaining, the provisions of G. L. c. 150E, § 9E, would prevail, and the city could unilaterally change the percentage of its contribution in accordance with the statute. See National Ass'n of Gov't Employees, Local R1-162 v. Labor Relations Comm'n, 17 Mass. App. Ct. at 544 (where statute not listed in G. L. c. 150E, § 7 [d], public employer and union cannot amend statute's requirements through collective bargaining).

5. Conclusion. The city and the school committee did not violate G. L. c. 150E, § 10 (a) (5), or, derivatively, G. L. c. 150E, § 10 (a) (1), when the city unilaterally reduced its percentage contribution to retired employees' health insurance premiums without engaging in collective bargaining over the matter with current employees. Accordingly, the decision of the board is reversed.

<u>So ordered</u>.