500                    74 Mass. App. Ct. 500 (2009)

Commonwealth Employment Relations Board *v.* Boston Teachers Union, Local 66, AFT, AFL-CIO.

Commonwealth Employment Relations Board[1]
& another[2] *vs.* Boston Teachers Union, Local 66,
AFT, AFL-CIO & others.[3]

No. 08-P-1290.

Suffolk. March 11, 2009. - June 25, 2009.

Present: Graham, Dreben, & Sikora, JJ.

*Public Employment,* Collective bargaining, Strike. *School and School Commit-
tee,* Strike by teachers. *Labor,* Strike by public employees. *Constitutional
Law,* Freedom of speech and press.

Evidence before the Commonwealth Employment Relations Board (board)
warranted, if not compelled, the board's conclusion that the Boston Teach-
ers Union (union) had violated the provisions of G. L. c. 150E, § 9A, by
encouraging and inducing a strike [505-506]; further, following the board's
filing of a complaint in the Superior Court seeking enforcement of the
board's order requiring the union, its officers, and its executive board
members, inter alia, to rescind and disavow their motion for a strike vote,
the trial court judge's issuance of a temporary restraining order in the
board's favor, after the union set a date for the strike vote, but prior to the
actual strike vote, did not improperly infringe on the union's right to free
speech and assembly, where the terms of the order placed no prior restraint
on the union to engage in public speech or debate, but rather prohibited it
from engaging in actions that properly were prohibited under § 9A [506].

Civil action commenced in the Superior Court Department on
February 8, 2007.

A motion for a temporary restraining order and a complaint
for contempt were heard by *Bruce R. Henry,* J., and entry of
final judgment was ordered by *Geraldine S. Hines,* J.

*Matthew E. Dwyer* for the defendants.

*John Foskett* for the intervener.

---

[1]Formerly the Labor Relations Commission. See St. 2007, c. 145, § 5.

[2]Boston School Committee, intervener.

[3]Officers and executive board members of the Boston Teachers Union. The
defendants are referred to collectively as the union.

74 Mass. App. Ct. 500 (2009)                                     501

Commonwealth Employment Relations Board *v.* Boston Teachers Union, Local 66, AFT, AFL-CIO.

GRAHAM, J. The Boston Teachers Union, Local 66, AFT, AFL-CIO (union), appeals from a judgment ordering it to pay $30,000 to the general fund of the Commonwealth, following an adjudication that the union was in contempt of an order of the Superior Court. In the order, the union was found to have violated the provisions of G. L. c. 150E, § 9A, which prohibits public employees and their unions from inducing, encouraging, or condoning a strike. The union contends that the judge's order, issued after the union set a date for a strike vote, but prior to the actual strike vote, violated the union members' rights under the First Amendment to the United States Constitution by imposing a prior restraint upon the union's right to free speech and assembly. We affirm.

*Background.* The union represents teachers and aides employed in Boston's public school system by the Boston School Committee (school committee).[4] As the certified bargaining representative for public employees, the union's collective bargaining relationship is governed by G. L. c. 150E, §§ 1 et seq. (Act). The Commonwealth Employment Relations Board (board) is charged with administering and enforcing the Act.

General Laws c. 150E, § 9A(*a*), added by St. 1973, c. 1078, § 2, prohibits public employees and their organizations from engaging in a strike, and further provides that "no public employee or employee organization shall induce, encourage or condone any strike, work stoppage, slowdown or withholding of services by such public employees." General Laws c. 150E, § 9A(*b*), directs the board to prevent or correct violations of § 9A(*a*) as follows: "Whenever a strike occurs or is about to occur, the employer shall petition the [board] to make an investigation. If, after investigation, the [board] determines that any provision of paragraph (*a*) of this section has been or is about to be violated, it shall immediately set requirements that must be complied with, including, but not limited to, instituting appropriate proceedings in the superior court for the county wherein such violation has occurred or is about to occur for enforcement of such requirements."

---

[4] The union represents approximately 8,000 teachers, nurses, other professional and paraprofessional employees, and certain substitute teachers who work for the school committee. There are about 149 schools in the Boston public school system, and approximately 58,000 students attend those schools.

The events leading to the Superior Court action began in December of 2006. The school committee and the union were parties to a collective bargaining agreement that expired on August 31, 2006. Since January, 2006, the parties had been involved in unsuccessful and acrimonious negotiations for a successor collective bargaining agreement. Convinced that the pressure of a pending strike vote was needed to motivate compromise by the school committee on terms of a new collective bargaining agreement, the union, on January 6, 2007, posted on its Web site an "emergency" "e-Bulletin" announcing a motion "[t]o place before the membership on February 14, 2007 for discussion, consideration, and debate by that body, in accordance with the bylaws, the question whether there should be a one-day strike on February 15, 2007 or on such other dates as may be chosen by the membership."

The e-Bulletin stated that the bargaining sessions over the previous twelve months "have not been productive" and that the parties "are still far apart on key issues"; described the school committee's proposal as "insulting to us"; and asserted that "[t]he school committee is apparently willing to foist the contract settlement on the new superintendent, using stall and crawl tactics." The e-Bulletin advised the union members that, in accordance with the motion, "over the next five weeks, we will be preparing for all exigencies that could result." It also scheduled "an emergency Area Captains meeting" for January 11, 2007, "an emergency, sign-in Building Representatives meeting" for February 1, 2007, and the strike vote meeting for February 14, 2007.

On January 7, 2007, the union president telephoned the Boston school superintendent and gave him a "heads up" about the February 14, 2007, strike vote and the February 15, 2007, strike date. Then, on January 11, 2007, the union advised its members by way of another e-Bulletin that on the previous day the membership had voted to approve the motion for "a strike vote to be taken" at the February 14, 2007, meeting. The e-Bulletin noted that the January 10, 2007, meeting "was [the] highest-attended membership meeting in over two years" and that the vote "was unanimous."[5]

---

[5]February 14, 2007, was a school day. The strike vote meeting was scheduled to begin that day at 4:00 P.M.

Meanwhile, the school committee, anticipating that union membership would authorize a strike, petitioned the board on January 9, 2007, to initiate an investigation pursuant to G. L. c. 150E, § 9A(*b*). The board conducted an investigation and held a hearing during which the parties had an opportunity to present evidence and examine witnesses. Following the investigation, the board concluded that although a strike vote had not yet been taken and approved by the union membership, the union's actions were "reasonably construed as constituting 'induce[ment], encourage-[ment] or condon[ation of] any strike, work stoppage, slowdown or withholding of services by such public employees" in violation of § 9A(*a*); and that a strike was "about to occur."[6] Acting pursuant to § 9A(*b*), the board issued an order that required the union, its officers, and its executive board members, inter alia, to rescind and disavow their motion for a strike vote.

The union failed to comply with the board's order, and on January 31, 2007, the board held a compliance hearing. While the union appeared at the hearing, it offered no evidence that it had complied with any of the requirements of the board's order. The school committee presented the board with copies of e-Bulletins and union newspaper articles posted after the board had issued its order, which demonstrated the union's noncompliance with the board's order. One article quoted an executive board member: "waiting any longer is not an option." The article further noted that the members left a January, 2007, meeting "with a 'steely willingness to strike if the School Committee forces [their] hand.' " On February 6, 2007, the board issued a decision in which it found that the union had failed to comply with the board's order.

*Superior Court proceedings.* After the union failed to comply with the order, the board filed a complaint in the Superior Court seeking enforcement of its order.[7] The school committee was

---

[6] The board ruled: "We construe the phrase 'about to occur' that appears in Section 9A(b) to include situations where actions by the employee organizations, their officials or members demonstrate that an actual threat of strike, work stoppage, or slowdown exists so that public officials would reasonably engage in contingency planning, to prevent the interruption of important public services."

[7] The union filed a counterclaim seeking a declaration that the board's order violates its "rights to free association and free expression."

allowed to intervene as a plaintiff. A judge of the Superior Court held an evidentiary hearing on February 12, 2007. The following day, the judge granted the board and the school committee a temporary restraining order.[8] In his order, the judge found that the union had engaged in prohibited § 9A(*a*) activities, and found that a strike by the Union was "about to occur." He therefore (a) enjoined the union, its members, officers, and executive board members from engaging in or threatening a strike or work stoppage; (b) enjoined the union from inducing, encouraging, or condoning any strike or work stoppage; and (c) required the union, by 11:00 A.M. on February 14, 2007, to disavow, publicly, the motion for a strike vote, notify its members of the disavowal and the members' obligation to perform their duties and refrain from participating in a strike. The union was also required to inform the members of the provisions of §§ 9A(*a*) and (*b*) of G. L. c. 150E, and of the board's order.

On February 14, 2007, the day of the scheduled vote, the union sought a stay from the Superior Court. That motion was denied and the union immediately filed a motion for a stay with the single justice of this court under Mass.R.A.P. 6(a), as amended, 378 Mass. 930 (1979). On the afternoon of February 14, 2007, the single justice heard the motion and denied it.

No strike vote occurred on February 14, 2007, and there was no strike on February 15, 2007. Instead of providing the union membership with the notices set out in the judge's order, the union issued a "special" e-Bulletin dated February 14, 2007, in which it announced that "[t]he following motion passed the [union] membership this afternoon: To recess today's meeting to 2/28/07 and to defer, in light of recent developments, any discussion, consideration and debate on the Executive Board's December 20, 2006 motion to that meeting." This action prompted the board to return to the Superior Court and file a complaint for contempt.

After an evidentiary hearing, the judge found the union in contempt of his earlier order, and imposed a prospective "coercive fine" against the union. The union complied with the judge's order the following day, and later filed a timely appeal to this court.

---

[8]The order was subsequently converted to a preliminary injunction.

*Discussion.* The union argues that the board prematurely and improperly concluded that a strike was "about to occur." The union further argues that the board has long held that the trigger for a determination that an employee organization is about to strike is when "certain conditions precedent have been satisfied such that it can be said that no further union action is necessary for a strike to commence." See *City of Worcester*, 13 M.L.C. 1627, 1630 (1987). The trigger, the union notes, has always been the actual strike vote by union membership. See *Boston Sch. Comm.*, 10 M.L.C. 1289, 1290 (1983); *Boston Teachers Union Local 66, MFT, AFT, AFL-CIO*, 27 M.L.C. 32, 34 (2000).

The union acknowledges that, in the circumstances of this case, the board's ability to intervene before any actual strike is significantly impaired, but argues that such impairment is relatively minor, and that the board's investigation would be simplified because "it will be considerably easier for the employer-petitioner to prove its case if a strike has already commenced when a strike investigation hearing is convened." We are not persuaded. The purpose of the Act, set forth in clear and unequivocal language, is to allow the board to intervene in a labor dispute at a point where the board may set the requirements necessary to prevent an illegal strike that is about to occur. See *Utility Workers of America, Local 466* v. *Labor Relations Commn.*, 389 Mass. 500, 504-505 (1983) (strikes by public employees "may create exigent and unpredictable situations," therefore public employers may act in good faith "to prevent public services from being disrupted").

The longstanding "actual vote" rule assumes that a public employer will have sufficient time to engage the process set forth in the Act once a strike vote has been held. But see *id.* at 504 ("A certain amount of delay is . . . inevitable under the petition procedure"). That assumption is invalid in the particular circumstances of this case, and we therefore reject the interpretation of the statute suggested by the union because it would make the statute ineffective. See *O'Shea* v. *Holyoke*, 345 Mass. 175, 179 (1962) (interpretation that would make a statute "wholly ineffective is strong indication that this interpretation does not reflect the legislative intention").

We conclude that the evidence before the board amply supported its conclusion that the union violated the provisions of § 9A(*a*) by encouraging and inducing a strike. That evidence included the e-Bulletins and articles from the union newspaper. A reasonable inference that the union was involved in encouraging a strike was warranted, if not compelled, by all of the evidence.

The union also alleges that the judge imposed a judicial prior restraint upon the union's exercise of protected speech and right to peaceful assembly guarantees in the First Amendment and in art. 16 of the Massachusetts Declaration of Rights by enforcing the board's alleged unconstitutional application of § 9A and issuing an injunction prohibiting the union "from gathering to discuss the merits of a strike and requiring it to disavow prior statements." We disagree. The union concedes, as it must, that there is no constitutional right of public employees to strike. See *Labor Relations Commn.* v. *Chelsea Teachers Union, Local 1340,* 400 Mass. 120, 124-125 (1987). In addition to barring strikes, § 9A also makes it unlawful for a public employee or union to "induce, encourage or condone" a strike.

The injunction issued by the judge imposed four requirements, namely, it enjoined the union, its executive board, and its members from engaging in or threatening a strike, and prohibited the union, its executive board, and its officers from inducing, encouraging, or condoning a strike; ordered them to disavow the executive board vote that scheduled the strike vote; required them to notify the members of their legal obligation not to engage in a strike; and required them to inform the members of the provision of § 9A and of the board's decision. The injunction placed no prior restraint upon the union to engage in public speech or debate, but rather prohibited it from engaging in actions that properly were prohibited under § 9A.

Moreover, to the extent that the conduct regulated by § 9A "includes both 'speech' and 'nonspeech' elements, the purpose of the statute is entirely unrelated to the suppression of free expression." *Zora* v. *State Ethics Commn.,* 415 Mass. 640, 651 (1993). The board has a substantial interest in preventing a strike by the union members, and "[a]ny incidental limitation of First Amendment freedoms" is justified. *Ibid.*

Accordingly, the judgment is affirmed.[9]

*So ordered.*

---

[9]Deciding as we do that the board acted properly in conducting an investigation pursuant to § 9A(*b*), we need not address the dismissal of the union's counterclaims.