NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12208

COMMISSIONER OF ADMINISTRATION AND FINANCE  vs.  COMMONWEALTH
EMPLOYMENT RELATIONS BOARD & another.[1]


Suffolk.     January 5, 2017. - May 12, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Commonwealth Employment Relations Board.  Labor, Unfair labor
     practice, Duty to bargain.  Commonwealth, Financial
     matters, Collective bargaining.



Appeal from a decision of the Division of Labor Relations.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Robert L. Quinan, Jr., Assistant Attorney General, for the
plaintiff.
T. Jane Gabriel for the defendant.
Alan H. Shapiro (John M. Becker also present) for the
intervener.
Mathew D. Jones, for Massachusetts Teachers Association,
amicus curiae, submitted a brief.


LOWY, J.  In June, 2010, near the height of the global

economic downturn that became known as the Great Recession, the

_____

[1] Coalition of Public Safety, intervener.

Secretary of the Executive Office of Administration and Finance (Secretary) submitted to the Legislature a request for an appropriation to fund collective bargaining agreements between the Commonwealth and two public employee unions reached more than thirteen months earlier.  In the letter containing the request, the Secretary informed the Legislature that several similar requests for salary increases had been rejected by the Legislature; that attempts to renegotiate the agreements with the unions had failed; and that approval of the request would require renegotiating several other collective bargaining agreements that the Legislature had already approved.

The unions both filed a charge of prohibited practice with the Department of Labor Relations (department), arguing, in essence, that the letter was a violation of the Commonwealth's purported duty to support an appropriation's request pursuant to G. L. c. 150E, § 7 (b), and also that the letter constituted a failure to bargain in good faith, in violation of G. L. c. 150E, § 10 (a) (5).  In January, 2014, a hearing officer with the department agreed with the unions and found that the Commonwealth had violated its § 7 (b) duty and had committed a prohibited practice under § 10 (a) (5) by failing to bargain in good faith.  The Commonwealth Employment Relations Board (board)[2]

_____

[2] Formerly the Labor Relations Commission.  See G. L. c. 23, § 9O, as appearing in St. 2007, c. 145, § 5.  References to the

affirmed, the Commonwealth appealed from the decision, and we transferred the case to this court on our own motion.

We reverse the board's decision and conclude that the Secretary's inclusion of information about the anticipated fiscal effects of a legislative decision to fund the collective bargaining agreements in his request for an appropriation did not violate § 7 (b) or constitute a prohibited practice.

Background. The facts of this case are not in dispute. In April, 2009, the Commonwealth, represented by the Executive Office of Administration and Finance, and the Coalition of Public Safety (COPS) entered into collective bargaining agreements for the periods of July 1, 2009, through June 30, 2010, and July 1, 2010, through June 30, 2013 (2010-2013 agreement). The 2010-2013 agreement called for annual salary increases of one per cent, three per cent, and three per cent, respectively, over the three years it covered. The Commonwealth had also entered into a collective bargaining agreement with the Massachusetts Correction Officers Federated Union (MCOFU) that covered the same period as the COPS 2010-2013 agreement and that also contained cost items that required appropriation.

In June, 2009, then Governor Deval Patrick submitted a revised appropriation recommendation to both houses of the

_____

Commonwealth Employment Relations Board (board) include the former Labor Relations Commission.

General Court for fiscal year 2010 (July 1, 2009, to June 30, 2010). In his accompanying message, the Governor estimated that there would be about $1.5 billion less in revenue compared with earlier projections because "Massachusetts continue[d] to experience the effects of a global economic downturn unseen since the Great Depression."

In June, 2010, the Secretary[3] submitted the cost items for both of the 2010-2013 agreements to the Legislature for funding pursuant to his obligation under § 7 (b). In the letter that accompanied the request, the Secretary, addressing the respective chairs of the committees on ways and means of the Senate and House of Representatives, wrote:

> "In addition to previous requests, I am fulfilling my statutory obligation to ask your consideration of the attached additional collective bargaining items in Section 2 of H.2, the Governor's fiscal year 2011 budget proposal. These items fund the collective bargaining agreements negotiated some time ago with [MCOFU] (Unit 4) and [COPS] (Unit 5). We are submitting them now because their costs first occur in fiscal year 2011.

> "These items provide for collective bargaining salary increases similar to contracts that were not funded during calendar year 2009. We have worked with the MCOFU and COPS leadership to reach agreement on contracts similar to those signed by other unions for this fiscal year and have failed to reach an agreement. Funding of these items will trigger

---

[3] The positions of the Secretary of Administration and Finance (Secretary) and the Commissioner of Administration were effectively merged in 2012. See G. L. c. 7, § 4, as amended through St. 2012, c. 165, § 33. The parties do not dispute that it is now the Secretary who is responsible for submitting budget requests pursuant to G. L. c. 150E, § 7 (b), and that the former Secretary acted in that capacity.

a reopener in collective bargaining agreements that the Legislature recently did fund only because they contained delays in the salary increases."

The Legislature did not appropriate funds in fiscal year 2011 for the cost items contained in the 2010-2013 agreements. Since that time COPS and the Commonwealth have entered into two successor agreements -- one of which covered the 2010-2013 period -- that were fully funded by the Legislature. The successor agreement covering the 2010-2013 period, however, resulted in the delay of each of the wage increases by one year.

About one week after the Secretary's June, 2010, request letter, COPS filed a charge of prohibited practice with the department, alleging that the Commonwealth failed to bargain in good faith, as required by § 10 (a) (5), because the Secretary's letter did not support the 2010-2013 agreement.[4] A complaint was issued following the department's investigation. The parties waived a hearing and submitted the case to the hearing officer on a stipulated record.

In January, 2014, the hearing officer found that the Commonwealth had violated the law because it had refused "to take all necessary and appropriate steps to support the collective bargaining agreement." The hearing officer ordered

---

[4] The Massachusetts Correction Officers Federated Union (MCOFU) filed a similar charge three months later, and the cases were consolidated. MCOFU subsequently withdrew its complaint on the ground that the issue had become moot.

the Commonwealth to "[s]ubmit to the Legislature a request for an appropriation to fund the cost items and take all appropriate steps to support the [2010-2013 agreement]."

The Commonwealth appealed to the board, which affirmed the decision of the hearing officer.[5] The Commonwealth appealed from the board's decision to the Appeals Court, G. L. c. 150E, § 11 (i), and we transferred the case to this court on our own motion.

Standard of review. This court reviews the board's decisions in accordance with the standards laid out in G. L. c. 30A, § 14 (7), which provides that a final administrative agency decision will be set aside if, among other grounds, it is "[u]nsupported by substantial evidence," G. L. c. 30A, § 14 (7) (e), or "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law," G. L. c. 30A, § 14 (7) (g). See G. L. c. 150E, § 11 (i). See also Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 567-568 (2015).

Discussion. A crucial point in the board's decision is the connection between the Commonwealth's statutory duty to request appropriations for cost items in executed collective bargaining

---

[5] Because the board incorporated the facts set forth by the hearing officer, fully affirmed the officer's analysis, and agreed with all of his conclusions, we refer to the two decisions collectively as the board's.

agreements under § 7 (b) and its obligation to bargain in good faith under § 10 (a) (5). The board concluded that by failing to affirmatively support the agreement, as required by § 7 (b), the Commonwealth had committed a breach of its duty to bargain in good faith, as required by § 10 (a) (5).

We are not persuaded that the two provisions operate in the manner suggested by the board. In our view, there are three flaws in the board's decision. First, the board erred in determining that § 7 (b) requires an employer not only to submit but also affirmatively to support a § 7 (b) appropriation request; second, its conclusion that the Commonwealth failed to bargain in good faith in violation of § 10 (a) (5) is unsupported by substantial evidence; and third, the board erroneously conflated the employer's obligations under the two statutory provisions.

a. Employer's duty under § 7 (b). General Laws c. 150E, § 7 (b), provides in relevant part:

> "The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein . . . . If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining."

We have previously discussed what constitutes a violation of § 7 (b) and its statutory predecessor. We have held that an

employer fails to comply with the statute when the employer refuses even to submit a request for appropriations to the appropriate legislative body, Boston Teachers Union, Local 66 v. School Comm. of Boston, 370 Mass. 455, 474-475 (1976) (mayor required to transmit school committee's request for appropriations to city council, notwithstanding mayor's special veto power);[6] Mendes v. Taunton, 366 Mass. 109, 118-119 (1974) (successor mayor must submit request to city council even though predecessor negotiated collective bargaining agreement), or when the employer submits a request that makes full funding of the agreement contingent on voters passing an override to cover a budget shortfall, Local 1652, Int'l Assoc. of Firefighters v. Framingham, 442 Mass. 463, 464 (2004) (Framingham) (officials did not fulfil obligation under § 7 [b] where budget submitted to town meeting made full funding of collective bargaining agreement contingent on voters passing property tax override). We have also held that although successor officials must submit

---

[6] In Boston Teachers Union, Local 66 v. School Comm. of Boston, 370 Mass. 455, 474-475 (1976), we stated that "[t]he mayor, of course, may recommend disapproval of the request." It is important to note that in that case it was the school committee that negotiated with the unions and not the mayor, and thus if the mayor recommended his disapproval it could not have been argued that the negotiations took place in bad faith based on the mayor's subsequent conduct. See Alliance, AFSCME/SEIU, AFL-CIO v. Secretary of Admin., 413 Mass. 377, 380, 382-383 (1992) (Alliance) (successor governor may recommend disapproval); Labor Relations Comm'n v. Selectmen of Dracut, 374 Mass. 619, 626 (1978) (same for successor selectmen).

the request, they may not be compelled to publicly support a collective bargaining agreement negotiated by their predecessors, because the successor officials' "constituents are entitled to the unfettered exercise of their judgment on matters of policy." Labor Relations Comm'n v. Selectmen of Dracut, 374 Mass. 619, 625 (1978).

Contrary to a number of board decisions cited by the board and COPS, we have never required officials affirmatively to support a § 7 (b) request. Contrast Town of Belmont, 22 M.L.C. 1636, 1639 (1996); Town of Rockland, 16 M.L.C. 1001, 1005 (1989); City of Chelsea, 13 M.L.C. 1144, 1149-1150 (1986); Worcester Sch. Comm., 5 M.L.C. 1080, 1083 (1978). Based on our review, these cases trace back to Turners Falls Fire Dist., 4 M.L.C. 1658, 1662 (1977), where the board stated: "It is well-settled law that an employer's refusal to take affirmative steps to support the terms of a collective bargaining agreement before the legislative body constitutes a violation of its duty to bargain in good faith." The board cites only to Mendes v. Taunton, 366 Mass. 109 (1974), for that proposition of law. The Mendes decision, however, merely requires that an official, even a successor official, must submit a request to the appropriate legislative body. Id. at 118-119.

We cited several of these board cases with approval in Framingham. See Framingham, 442 Mass. at 469-470 & n.6. See

also id. at 479-480 (Sosman, J., dissenting). Those cases were cited, however, to illustrate that the obligation to seek funding is "unconditional" in the sense that requests for funding may not be conditioned on the occurrence of another event under the language of § 7 (b). Id. at 469. To the extent that these cited decisions of the board (and any dicta in Framingham) suggest that a lack of affirmative support inevitably constitutes a violation of § 7 (b), they rest on an error of law, and we do not follow them.

Accordingly, when an employer submits a § 7 (b) request to the appropriate legislative body for an appropriation to fully fund cost items in a collective bargaining agreement and the request includes pertinent information concerning fiscal and public policy matters, it does not violate its statutory obligation under § 7 (b). See Alliance, AFSCME/SEIU, AFL-CIO v. Secretary of Admin., 413 Mass. 377, 380 (1992).[7]

---

[7] In Alliance, 413 Mass. at 379, during the final days of Governor Michael Dukakis's administration, the Secretary signed a collective bargaining agreement with a number of unions. The § 7 (b) request obligation fell to the successor administration of Governor William Weld. Id. at 380. At the time of the § 7 (b) request, Governor Weld also sent a written message to the Legislature urging it to reject the appropriation request because of the financial circumstances of the Commonwealth. Id. In that case, neither party raised the issue whether Governor Weld's message violated § 7 (b), and the court, without itself remarking on the issue, had no trouble determining that the Governor's actions in sending the message were appropriate. Id. at 382-383.

Here, the employer submitted the § 7 (b) request to the Legislature and did not condition funding the request on the occurrence of another event. Thus, there was no violation of § 7 (b), and the board's conclusion to the contrary was an error of law.

b. Good faith in collective bargaining. Under the public employee collective bargaining statute,[8] G. L. c. 150E, both the employer and the exclusive representative of the employee organizations must "negotiate in good faith." G. L. c. 150E, § 6.[9] Refusing to "bargain collectively in good faith" is a prohibited practice. G. L. c. 150E, § 10 (a) (5).[10] The duty to bargain in good faith is the duty to meet and negotiate in good faith. See School Comm. of Newton v. Labor Relations Comm'n,

---

[8] The Commonwealth is a public employer, and the unions are employee organizations within the meaning of G. L. c. 150E, § 1.

[9] General Laws c. 150E, § 6, provides in relevant part:

"The employer and the exclusive representative shall . . . negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment . . . ."

[10] General Laws c. 150E, § 10 (a) (5), provides in relevant part:

"(a) It shall be a prohibited practice for a public employer or its designated representative to:

". . .

"(5) Refuse to bargain collectively in good faith with the exclusive representative as required in [§ 6] . . . ."

388 Mass. 557, 572 (1983). "'Good faith' implies an open and fair mind as well as a sincere effort to reach a common ground." Id.

A comprehensive analysis of the precise contours of what constitutes good faith during negotiations would fill volumes, but a few examples may be helpful. Appellate courts in the Commonwealth have held that a public employer violates the obligation to bargain in good faith when the employer refuses to bargain at all, id. at 574-575, or when it reaches an agreement with a union but then makes its execution contingent on approval by a supervisory entity, Springfield Hous. Auth. v. Labor Relations Comm'n, 16 Mass. App. Ct. 653, 654, 658-659 (1983) (bad faith where housing authority ratified agreement with condition that it be approved by agency of Executive Office of Communities and Development, which had supervisory functions over housing authorities).

What emerges from the case law is that for a public employer to comply with the obligation to bargain and negotiate in good faith it must have an open and fair mind during the negotiating and bargaining process. A contrary conclusion would run afoul of the plain language of G. L. c. 150E, §§ 6 and 10 (a) (5). See Hashimi v. Kalil, 388 Mass. 607, 609 (1983) ("In construing a statute, words are to be accorded their ordinary meaning and approved usage").

Here, the board concluded that the Commonwealth failed to bargain in good faith in 2009 because it included statements regarding the fiscal consequences of approving the submitted appropriation in its § 7 (b) request submitted in June, 2010. This conclusion was unsupported by substantial evidence.

There was no evidence presented to the board alleging bad faith on the part of the Commonwealth at the time the agreement was reached. The only purported evidence of bad faith was the letter from the Secretary containing pertinent information concerning the fiscal implications of funding the 2010-2013 agreement, sent thirteen months after negotiations concluded and while the Commonwealth continued to find itself in the throes of a nearly unprecedented economic crisis.

The temporal gap is indisputable, and there was no evidence presented suggesting that the Secretary's characterization of the economic consequences of funding the agreement was inaccurate. In these circumstances, it cannot reasonably be said that the employer did not have an "open and fair mind" when it concluded its agreement with the unions, simply based on the Secretary's letter.

c. Connection between § 7 (b) and § 10 (a) (5). Our review of the board's decision in the case, as well as its prior decisions, suggests that the board has viewed the employer's obligation to submit an appropriations request under § 7 (b) as

directly linked to its obligation to bargain in good faith under § 10 (a) (5).

In essence, the board appears to have used its interpretation of § 7 (b) to impose an ongoing obligation on the employer that covers the period of time between the conclusion of negotiations and the submission of the § 7 (b) request. Under this view, the employer's failure to affirmatively support an agreement shows that it did not have an "open and fair mind" when negotiating a collective bargaining agreement because the "affirmative support" obligation reaches back to the moment in time when the bargain is struck and thus could be said to be dispositive of the employer's state of mind during negotiations. See, e.g., Turners Falls Fire Dist., 4 M.L.C. at 1662.

That logic fails. The plain language of § 7 (b) and § 10 (a) (5) focuses on two distinct moments in time. Section 10 (a) (5) focuses on the state of mind of the employer during the negotiations, up until the negotiations are concluded. Indeed, § 10 (a) (5) contemplates that negotiations may not even result in an agreement and imposes no obligation to reach an agreement. Section 7 (b), however, contemplates action occurring after a collective bargaining agreement has been finalized and executed:

> "The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an

appropriation necessary to fund the cost items contained therein . . . ."[11]

Because of the distinct and different points of temporal focus found in the respective statutes' plain language, it cannot be said that a violation of § 7 (b) (e.g., submitting a contingent request), in and of itself, constitutes a failure to negotiate in good faith under § 10 (a) (5).

That is not to say, however, that the form, contents, or legality of a § 7 (b) request may not be probative of whether the employer negotiated in good faith.  Under certain circumstances, a § 7 (b) request may indicate that the employer engaged in bad faith negotiations.  For example, a particularly negative letter requesting an appropriation but recommending rejection sent shortly after negotiations concluded would be probative of a lack of good faith during negotiations.  Such circumstances might constitute evidence that the employer had entered into the agreement with the intention of repudiating it before the legislative body.  Those circumstances are not present here, however.

Conclusion.  We reverse the board's decision finding that the Commonwealth violated G. L. c. 150E, § 7 (b), and committed

---

[11] Although submission of the § 7 (b) request occurred outside the thirty-day window mentioned in the quoted statute, neither party suggests the timing has any bearing on the case.

a prohibited practice in violation of G. L. c. 150E,

§ 10 (a) (5).  The board's order is vacated.

So ordered.