NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1509

MARY SARTRE

vs.

COMMONWEALTH EMPLOYMENT RELATIONS BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Mary Sartre,[1] appeals from a decision of the

Commonwealth Employment Relations Board (board) affirming the

dismissal of a charge of prohibited practice filed pursuant to

G. L. c. 150E against the Department of Revenue (DOR).  We

affirm.

Background.  Sartre was employed as a meals tax auditor

with the southern region of the DOR's Trustee Tax Bureau in Fall

River and was a member of the National Association of Government

Employees bargaining unit (union).  On November 16 and 17, 2016,

---

[1] At the time of the agency proceedings, the plaintiff was known as Mary Bissonnette.  Her last name was changed in 2023 to Sartre.  Hereinafter, she will be referred to as Sartre regardless of her name at the time of the relevant events.

Sartre was assigned to attend a two-day training seminar in Chelsea. Within a few days of the seminar, Sartre requested five and one-half hours of travel time from her residence in Fall River to Chelsea for the seminar, but the DOR denied the request and allowed her only four hours of travel time. On November 22, 2016, the DOR director, who was also Sartre's supervisor, sent Sartre a formal written warning alleging that she was late for the training on the first day and left ninety minutes early on the second day. Sartre contacted the union about the denial of her full travel time request. The union negotiated with the DOR and they agreed that Sartre could take vacation time to make up the difference in travel time between what she was paid and what she sought. Neither Sartre nor the union filed a grievance over the warning or the travel time issue.

A year later, on October 27, 2017, Sartre submitted an email rebuttal to the 2016 written warning. She addressed the email to her director at the DOR. Sartre's email contained numerous disparaging comments about her director and alleged that there had been clear violations of the DOR's management code of conduct. As a result of the email, the DOR became concerned about Sartre's "health and wellbeing" and placed her on paid administrative leave, pending a "fitness for duty

2

certification" by her health care provider and a second certification by an independent medical examiner (IME).

Based on the IME report, which concluded that Sartre had an "inability to deal tactfully with others . . . based on her language and tone towards her director and towards other individuals within the departset," the DOR decided to transfer Sartre so she could work under a different director. The DOR suggested that she relocate to an office in Chelsea, which was the closest region to the southern region.[2] Ultimately, Sartre accepted the relocation and reported to Chelsea on April 3, 2018. Three days later, Sartre filed a grievance alleging that her transfer to Chelsea violated § 20.1 of the collective bargaining agreement (CBA) and was made in retaliation of her hostile work environment complaint. In September 2018, the union filed a prohibited practice charge with the Department of Labor Relations (DLR). The union was allowed to amend the charges and specifically alleged that the DOR violated the law by (1) retaliating against Sartre because of her union

_____

[2] Sartre claims that the Chelsea office was "more than fifty miles from her home in Somerset, entailing a four-hour round-trip commute[.]" However, the board asserts that despite Sartre's transfer to Chelsea, she was provided flexibility and telecommuting options so that she would only have to be physically present in Chelsea one or two days a week.

3

activities, (2) bargaining in bad faith over Sartre's transfer, and (3) repudiating Article 20 of the CBA.

The DLR's investigator dismissed the charges in their entirety after reviewing the evidence and arguments presented. The board affirmed the investigator's decision on May 16, 2019. On June 11, 2019, Sartre filed a notice of appeal of the board's decision.

Discussion.[3] The board has the authority to dismiss a charge of prohibited practice if it finds no probable cause to believe that a violation of the law has occurred. See G. L. c. 150E, § 11. "[A] final administrative agency decision will be set aside if, among other grounds, it is '[u]nsupported by substantial evidence'. . . or '[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.'" Commissioner of Admin. & Fin. v. Commonwealth Employment Relations Bd., 477 Mass. 92, 95 (2017), quoting G. L. c. 30A, § 14. "[W]e 'give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.'" Brookline

_____

[3] The board challenges Sartre's standing for this appeal because she was not a "party" to the grievance between the union and the board. The union did not appeal and is not a party to this case. Because of our ultimate conclusion, we assume, without deciding, that Sartre has standing to challenge the board's decision.

4

v. Alston, 487 Mass. 278, 299 (2021), quoting G. L. c. 30A, § 14 (7).

A public employer violates G. L. c. 150E, § 10 (a) (1), when it retaliates or discriminates against an employee for engaging in activity protected by G. L. c. 150E, § 2.  See School Comm. of Boston v. Labor Relations Comm'n, 40 Mass. App. Ct. 327, 329 (1996).  The union must show:  (1) the employee was engaged in concerted activity protected by G. L. c. 150E, § 2; (2) the employer knew of the concerted, protected activity; (3) the employer took adverse action against the employee; and (4) the employer's action was motivated by a desire to penalize or discourage the protected activity.  See School Comm. of Boston, supra.

Here, the board's investigator found

> "[w]hile [Sartre] engaged in union activities of which the Employer was aware, and the transfer constitutes an adverse action, I do not find that the transfer was motivated to penalize her for her union activities. There is no evidence that the Employer was upset with [Sartre's] union activities, which had occurred almost two years before."[4]

---

[4] The board inadvertently referred to a 2017 union activity in its decision.  This was a clear mistake based on the remaining part of the sentence.  Sartre also mistakenly wrote November 17, 2017, instead of 2016 in paragraph 7 of her affidavit which may be why the board used the 2017 date. Nothing in our decision turns on these discrepancies.

5

The evidence clearly supports that the conclusion that the DOR's decision to transfer Sartre had nothing to do with her union activities.

The investigator reasonably found that the DOR was solely motivated by its concerns regarding Sartre's inability to work with her director which was triggered by her October 2017 email and IME results.[5] The investigator, therefore, reasonably found no nexus between Sartre's 2016 union activity and the decision to transfer her to Chelsea in 2017. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 474 Mass. 382, 406 (2016) ("causal connection . . . between the protected conduct and the adverse action" required for retaliation claim [citation omitted]). Furthermore, the DOR provided a legitimate non-discriminatory reason for its decision to transfer Sartre.[6]

---

[5] We discern no merit to Sartre's contention that her October 2017 email was protected concerted activity. Additionally, this argument was not brought to the board's attention and cannot be raised for the first time on appeal. See McCormick v. Labor Relations Comm'n, 412 Mass. 164, 170 (1992).

[6] Sartre's remaining claims that the investigator improperly considered evidence submitted by the DOR and excluded evidence submitted by the union was not an abuse of discretion because the board looked at all the evidence and determined that the evidence would not have changed the outcome of its decision.

Conclusion.  The decision of the Commonwealth Employment Relations Board is affirmed.

So ordered.

By the Court (Blake,
  Ditkoff & D'Angelo, JJ.[7]),

*Paul Little*

Clerk

Entered:  November 20, 2024.

---

[7] The panelists are listed in order of seniority.