APPEALS COURT 
 
 ANDOVER EDUCATION ASSOCIATION vs. COMMONWEALTH EMPLOYMENT RELATIONS BOARD & another.[1]

 
 Docket:
 24-P-465
 
 
 Dates:
 March 4, 2025 – September 9, 2025
 
 
 Present:
 Desmond, Ditkoff, & Englander, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Commonwealth Employment Relations Board. School and School Committee, Collective bargaining, Compensation of personnel. Labor, Public employment, Collective bargaining. Public Employment, Collective bargaining. Municipal Corporations, Collective bargaining, Town meeting, Warrant for town meeting. Constitutional Law, Union, Right to petition government, Freedom of speech and press.
 
 

             Appeal from a decision of the Commonwealth Employment Relations Board. 
            Ryan McGovern Quinn for the plaintiff.
            Kathleen Goodberlet for Commonwealth Employment Relations Board.
            John Foskett for the intervener.
            DITKOFF, J.  During negotiations of a collective bargaining agreement between the Andover Education Association (union) and the school committee of Andover (school committee), the parties discussed including a one-time payment of $800 to instructional assistants but came to an agreement that did not include such a payment.  Within weeks of coming to this agreement, the union began advocating for a warrant article before Andover town meeting that would provide a one-time payment of $800 to the instructional assistants.  After the article passed, the union sent a letter to the school committee requesting that it make the payments.  The Commonwealth Employment Relations Board (board) found that this was a violation of the union's duty to bargain collectively in good faith.  The union challenges the finding that it engaged in a prohibited labor practice and further argues that its rights under the First Amendment to the United States Constitution were violated.  Discerning no error in the board's conclusion that the union failed to bargain in good faith and that the Commonwealth may constitutionally restrain government unions from bargaining in bad faith in this manner, we affirm.
            1.  Background.  The facts are largely undisputed.  The union is the exclusive bargaining representative of the teachers, instructional assistants,[2] and secretaries who work for the public schools of the town of Andover (town).  By statute, the school committee of Andover is the only town entity that may negotiate with the union.  See G. L. c. 150E, § 1 ("In the case of school employees, the municipal employer shall be represented by the school committee or its designated representative or representatives").
            The collective bargaining agreement covering the instructional assistants expired in August 2020, and negotiations on a new agreement were still ongoing in early 2022.  As late as January 19, 2022, the proposals included a one-time payment ranging from $300 to $800.  In February 2022, a Department of Labor Relations mediator issued a fact-finding report, a step taken after a prolonged impasse and the final step before a school committee can implement unilateral changes to a collective bargaining agreement.  See G. L. c. 150E, § 9.
            On March 5, 2022, the parties came to an agreement and signed a memorandum of agreement extending the terms of the collective bargaining agreement governing the 2017-2020 school years through the 2022-2023 school years.  The agreement "included provisions providing for retroactivity of wage increases, percentage increases to the hourly rates for [instructional assistants], as well as a $100 [annual] increase in pay for [instructional assistants] with sixteen or more years of service."  The agreement did not include any one-time payments to the instructional assistants.  The agreement was ratified on March 17, 2022.
            The next annual town meeting was scheduled for May 17, 2022.  In early April 2022, several town residents[3] filed a warrant article authorizing a "COVID-19 stipend for educational support professionals" in the form of a one-time payment of $800 for "instructional assistants, food service workers, administrative assistants, custodians, and any other hourly education support professional . . . providing in-person essential work since March 20, 2020."  The money was to be funded by Federal coronavirus relief funds, if possible, and from town cash reserves, if not.
            The union substantially participated in urging Andover's open town meeting to adopt this warrant article.  A member of the union's bargaining team spoke in favor of the article at a joint meeting of the town's select board, finance committee, and planning board.  The union posted three times on its Facebook page urging the public to vote for the warrant article.  The union sent a letter to its members endorsing the warrant article and describing the town meeting as "a rare and unique opportunity for MTA [Massachusetts Teachers Association[4]] members to push for change from the ground up."  The letter also announced that the union was a part of Andover Citizens for Transparency, a group pushing for passage of the warrant article.  A union board member served as a moderator of the Andover Citizens for Transparency's Facebook page.
            At the town meeting, the warrant article passed by a vote of 250 to 231.  Ten days later, the union sent a letter to the school committee "agree[ing] to these payments" and "look[ing] forward to ensuring that the will of the community is executed, and that our hard working and deserving employees who have served Andover's kids during the pandemic receive some additional appropriate compensation in a timely manner." 
            The school committee, attaching a legal opinion stating that the warrant article was an unlawful encroachment on the committee's exclusive bargaining rights, rejected the union's request to reopen the collective bargaining agreement.  Because only the school committee, and not town meeting, has authority over teacher compensation, see Norton Teachers Ass'n v. Norton, 361 Mass. 150, 154-155 (1972), the payments were never made.
            That same month, the school committee filed a charge of prohibited labor practices against the union with the Department of Labor Relations (department).  The union moved to dismiss the charge, arguing, inter alia, that the exercise of its First Amendment right to petition the government could not serve as a basis for a prohibited practices charge.  In November, a department investigator found probable cause for the claim to proceed.
            The parties quickly determined that the facts were not in dispute and petitioned to bypass a hearing before the department and proceed directly to the board on stipulated facts.  See 456 Code Mass. Regs. § 13.13.  The board agreed and heard the matter directly.
            The board found that "the Union, through the actions of its Executive Board members, violated its duty to bargain in good faith under [G. L. c. 150E, § 10 (b) (2),] when, barely three weeks after executing the [memorandum of agreement], it sought additional compensation for [instructional assistants] through the Town Meeting process, thereby bypassing the School Committee in an effort to obtain what it could not obtain through negotiations."  The board also found that the union's actions regarding the warrant article "demonstrate[] that the Union was not bargaining in good faith when it agreed to the [memorandum of agreement] and executed the amendments to its collective bargaining agreement with the School Committee."  The board also rejected the union's argument that its decision violated the union's constitutionally protected rights.
            The board ordered the union to desist from "[f]ailing to bargain in good faith" and "promoting the passage of a warrant article to provide $800 stipends to instructional assistants."  The board also ordered the union to "[b]argain in good faith with the School Committee by dealing only with it as to matters of collective bargaining" and to send its members notice of these orders.  No other sanction was imposed.
            As authorized by G. L. c. 150, § 11 (i), and G. L. c. 211A, § 5, the union appealed the board's order directly to this court.
            2.  Standard of review.  "An appeal from a decision of the board is governed by G. L. c. 30A, § 14."  Newton v. Commonwealth Employment Relations Bd., 100 Mass. App. Ct. 574, 579 (2021).  "A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Newton v. Commonwealth Employment Relations Bd., 496 Mass. 82, 89 (2025), quoting Brookfield v. Labor Relations Comm'n, 443 Mass. 315, 321 (2005).  We "must accord deference to the [board's] specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions."  Commonwealth v. Commonwealth Employment Relations Bd., 101 Mass. App. Ct. 616, 623 (2022), quoting Worcester v. Labor Relations Comm'n, 438 Mass. 177, 180 (2002).  "As always, however, deference does not permit abdication of judicial supervision."  Chief Justice for Admin. & Mgt. of the Trial Court v. Commonwealth Employment Relations Bd., 79 Mass. App. Ct. 374, 380 (2011).  "[T]he duty of statutory interpretation rests ultimately with the courts."  Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 568 (2015).
            3.  Prohibited labor practice.  General Laws c. 150E, § 10 (b) provides that "[i]t shall be a prohibited practice for an employee organization or its designated agent to:  . . . (2) Refuse to bargain collectively in good faith with the public employer."  In the case of an organization of school employees, the "public employer" is defined as "the school committee or its designated representative or representatives."  G. L. c. 150E, § 1.  "'Good faith' implies an open and fair mind as well as a sincere effort to reach a common ground."  Commissioner of Admin. & Fin. v. Commonwealth Employment Relations Bd., 477 Mass. 92, 98-99 (2017), quoting School Comm. of Newton v. Labor Relations Comm'n, 388 Mass. 557, 572 (1983).
            The parties here expend much printer toner on the question whether the board does, or can, categorically bar a union from advocating for its interests at town meeting.  This dispute appears to arise from a decision of the Labor Relations Commission (the predecessor of the board) more than forty years ago that contains broad language that "[a]ttempts to bypass the employer by a union are . . . derogatory of the employer's bargaining rights and . . . constitute bad faith bargaining."  Town of Provincetown, 9 M.L.C. 1315, 1318 (1982).[5]  But see Weymouth Sch. Comm., 9 M.L.C. 1091, 1096 (1982) (union "may lawfully resort to the town's legislative process" to achieve benefit not listed in G. L. c. 150E, § 7 [d]).  The more recent board decision brought to our attention involves, as here, a union's attempting "to achieve its failed bargaining goals through Town Meeting."  Town of Hudson, 48 M.L.C. 136, 140 (2021).
            The prohibited labor practices statute, G. L. c. 150E, § 10, contains no categorical prohibition as such against direct bargaining or against a union's advocating for its interests at town meeting.  Rather, the prohibition, for both employer and union, is against "[r]efus[ing] to bargain collectively in good faith."  G. L. c. 150E, § 10 (a) (5), (b) (2).  When a union uses the town meeting process to avoid bargaining in good faith with the public employer, it violates this prohibition.
            The first way in which a union can use town meeting to avoid bargaining in good faith with its employer is through "fait accompli" bargaining, a term coined in Anderson v. Selectmen of Wrentham, 406 Mass. 508, 512 (1990).  There, town meeting purported to set the town's contribution towards life and health insurance for town employees at ninety-nine percent.  Id. at 509.[6]  The Supreme Judicial Court determined that the contribution percentage must be set through collective bargaining between the union and the public employer (in that case, the board of selectmen).  Id. at 511.  Accordingly, "the essence of good faith bargaining would be thwarted if the parties entered negotiations at a point where the very subject of those negotiations -- the insurance premium contribution rate -- had already been inflexibly established by the town meeting."  Id. at 512.  Such fait accompli bargaining, the Supreme Judicial Court stated, is "antithetical" to good faith collective bargaining.  Id.
            In the present case and in the Town of Hudson case, the board extended this concept to what we will term double-cross bargaining.  In Town of Hudson, 48 M.L.C. at 137-138, the firefighters' union requested an increase in minimum staffing but then agreed to a collective bargaining agreement that contained no such increase.  Within a month of agreeing to the collective bargaining agreement, the union advocated for a town meeting warrant article that would increase the minimum staffing.  Id. at 138.  The board found a prohibited labor practice, as "the Union should not be permitted to achieve its failed bargaining goals through Town Meeting."  Id. at 140.
            Here, the board found both fait accompli and double-cross bargaining.  The board found that the union attempted to engage in what can be described as fait accompli bargaining by securing the $800 stipends from town meeting and then proposing that the school committee enter into an agreement to that effect.  The board also found what we call double-cross bargaining in the union's "bypassing the School Committee in an effort to obtain what it could not obtain through negotiations."  For a union to agree to a collective bargaining agreement that omits one of the union's desired terms (presumably in exchange for employer concessions elsewhere), only to promptly attempt to force the employer to provide that omitted benefit is as antithetical to good faith bargaining as the fait accompli bargaining discussed in Anderson, 406 Mass. at 512.  Cf. Commissioner of Admin. & Fin., 477 Mass. at 101 (employer recommending rejection of agreement "shortly after negotiations concluded would be probative of a lack of good faith during negotiations").  We agree with the board that both fait accompli and double-cross bargaining can form the basis of a finding that a union violated G. L. c. 150E, § 10 (b) (2), by refusing to bargain in good faith.
            To be sure, the prohibition against using town meeting to set up fait accompli bargaining or to engage in double-cross bargaining is not the same thing as a prohibition against any action at town meeting by the union.  Indeed, it is easy to imagine many actions a union could take at town meeting that would not be indicative of refusal to bargain in good faith.  For example, a union could certainly advocate at town meeting for the ratification and funding of the collective bargaining agreement it has reached with the relevant municipal entity.  A teachers' union could presumably advocate for funding for police officers to direct traffic near school grounds or for funding for town parks that are near public schools.  The relevant prohibition is on refusal to bargain in good faith with the school committee, which is precisely what the board found that the union did here.
            With that understanding, we find no factual error in the board's determination that the union violated its duty to bargain in good faith by engaging in fait accompli and double-cross bargaining.  The undisputed facts are that the union sought an $800 payment for instructional assistants through collective bargaining and then agreed to a collective bargaining agreement that contained no such payments.  Within weeks, the union advocated for a town meeting warrant article that would provide those very payments.  The board could reasonably find that this was double-cross bargaining and thus a refusal to bargain in good faith with the school committee.
            The union then sent a letter to the school committee asking it to make those payments.  The board could reasonably find that this was an attempt at fait accompli bargaining.  Although the letter did not explicitly ask the school committee to bargain with it regarding those payments, that is the nature of fait accompli bargaining; no good faith bargaining is necessary because the result is foreordained.  The union's proposed alternative reading of its letter as merely "a limited waiver of bargaining rights by offering the Union's affirmative advance agreement to permit the School Committee to implement the $800 payment" is a strained reading of a letter asking to "formalize the compensation" and "look[ing] forward to ensuring that the will of the community is executed."  In any event, it is not for us to choose between reasonable interpretations of this letter, even if they were equally compelling.  Rather, we "may not displace an administrative board's choice between two fairly conflicting views."  Newton, 496 Mass. at 89, quoting Brookfield, 443 Mass. at 321.
            To this, the union argues that the payments were not a subject of collective bargaining "because [the Federal coronavirus relief funds] are entrusted to the Town by law."  See 31 C.F.R. § 35.3 (listing permissible recipients of relief funds).  This argument is contrary to the agreed facts in this case.  The parties discussed these same one-time payments in the course of their collective bargaining.  Indeed, wages are a mandatory subject of collective bargaining.  G. L. c. 150E, § 6.  See Secretary of Admin. & Fin. v. Commonwealth Employment Relations Bd., 74 Mass. App. Ct. 91, 97 (2009) ("There is no more fundamental term or condition of employment than pay").  Accord Commonwealth v. Commonwealth Employment Relations Bd., 101 Mass. App. Ct. 616, 626 (2022).
            Similarly unpersuasive is the union's argument that it did not engage in fait accompli bargaining because it ultimately failed to obtain the payments.  The prohibited practice centers around the bargaining process, not the ultimate result obtained.  A double cross that fails is still a double cross.  The union violated its duty of good faith bargaining by agreeing to a collective bargaining agreement that did not include the one-time payments and then promptly lobbying for town meeting to provide it with what it had just agreed to forgo.
            4.  First Amendment.[7]  It is beyond cavil that there is a right to free speech and petition regarding municipal legislative bodies such as town meeting.  See Barron v. Kolenda, 491 Mass. 408, 417 (2023).  That these rights were exercised by the union members through the use of a labor union does not eliminate the constitutional protections accorded them.  See Citizens United v. Federal Election Comm'n, 558 U.S. 310, 365 (2010).  Accordingly, we must determine whether the restrictions on the exercise of those rights imposed by G. L. c. 150E, § 10 (b) (2), survive constitutional scrutiny.
            We begin with the vexing question whether strict scrutiny or exacting scrutiny is the proper test.  As a general rule, "[a] law that is content based on its face is subject to strict scrutiny."  Reed v. Gilbert, 576 U.S. 155, 165 (2015).[8]  Restrictions on commercial speech, however, are subjected to a lesser standard of review that the Supreme Court has recently termed "'exacting' scrutiny."  Janus v. American Fed'n of State, County, & Mun. Employees, Council 31, 585 U.S. 878, 894 (2018), quoting Knox v. Service Employees Int'l Union, Local 1000, 567 U.S. 298, 310 (2012).  See Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 607 (2021) (exacting scrutiny applies to compelled disclosure).  In many ways, the speech in question here appears commercial; a vendor of educational services is proposing additional payment for its services.  On the other hand, we are reluctant to characterize speech directed to a legislative body as commercial.[9]  In the end, like the Supreme Court in Janus, supra at 895, we sidestep the question by assuming the standard less favorable to the prevailing party, in this case strict scrutiny.
            To survive strict scrutiny, a government action must be "narrowly tailored to further a compelling and legitimate government interest."  Frechette v. D'Andrea, 494 Mass. 167, 180 (2024), quoting Kligler v. Attorney Gen., 491 Mass. 38, 55 (2022).  In this regard, the United States Supreme Court has assumed, without deciding, that labor peace is a compelling government interest.  See Janus, 585 U.S. at 895.  Whether labor peace generally is a compelling government interest, it is difficult to counter the proposition that labor peace between the government and its own employees is a compelling government interest.  After all, it is literally impossible for the government to function without labor peace with its own employees.  Indeed, the danger of labor unrest by government employees to the functioning of local government is far from theoretical.  Here, while the union was actively litigating this matter before the board, it also engaged in an illegal strike, temporarily preventing the town from complying with one of its most important obligations, that of providing a public education to its children.
            In any event, labor peace in the sense of exclusive collective bargaining has been held to be a compelling government interest.  The Supreme Court in Janus was concerned with mandatory agency fees.  Regarding bargaining, it stated that "the State may require that a union serve as exclusive bargaining agent for its employees -- itself a significant impingement on associational freedoms that would not be tolerated in other contexts."  Janus, 585 U.S. at 916.  This statement followed an unbroken line of cases approving the constitutionality of exclusive bargaining laws.  See, e.g., Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 290 (1984); Knight v. Minnesota Community College Faculty Ass'n, 460 U.S. 1048, 1048 (1983).
            Moreover, as the Supreme Judicial Court has explained, "[e]xclusive representation . . . is necessary to effectively and efficiently negotiate collective bargaining agreements and thus promote peaceful and productive labor-management relations."  Branch v. Commonwealth Employment Relations Bd., 481 Mass. 810, 820 (2019), cert. denied, 140 S. Ct. 858 (2020).  As the court explained, "conflicting representatives in collective bargaining is not practicable."  Id. at 828.  Rather, having a party "speak with one voice at the bargaining table is critical to the efficient resolution of labor-management disputes."  Id.  Again, the strike that occurred in the town after the events here demonstrates what can happen when the collective bargaining process is poisoned by bad faith bargaining practices.
            Having concluded that achieving labor peace through exclusive collective bargaining is a compelling government interest, we next ask whether the relevant prohibition is narrowly tailored to further that interest.  Here, the identification of the prohibition is key.  If, as the union contends, the board was "forbidding the Union from supporting proposals affecting its members before a town meeting," we might well wonder whether such a prohibition was narrowly tailored to address this compelling government interest.
            As explained supra, whatever the board's predecessor was doing in 1982 in Town of Provincetown, the prohibition applied here is against using the town meeting process to engage in bad faith bargaining, specifically, fait accompli and double-cross bargaining.  Indeed, the board specifically stated that "the Law does not restrict the Union's ability to advocate for its positions on issues before Town Meeting or other public bodies" in the absence of an "attempt to sidestep the mutual bargaining obligation it has with the School Committee to obtain a benefit that it could have achieved through collective bargaining." 
            As fait accompli and double-cross bargaining are "antithetical" to "good faith bargaining," Anderson, 406 Mass. at 512, the prohibition on those practices is narrowly tailored to the compelling government interest in achieving labor peace between the government and its own employees through the use of exclusive collective bargaining.  As those were the prohibitions applied by the board in this case, the board's decision that its findings did not violate the First Amendment is sound.[10]  See Spicuzza v. Commonwealth, 494 Mass. 1005, 1008 (2024); Commonwealth v. Weston W., 455 Mass. 24, 37 (2009).
            The decision and order of the Commonwealth Employment Relations Board is affirmed.
So ordered.
 
footnotes

 
            [1] School committee of Andover, intervener.
            [2] An instructional assistant, sometimes known as a teacher's aide, provides support to teachers in a classroom setting.  See Rea v. District Sch. Bd. of Pasco County, 24 F. Supp. 3d 1213, 1215 (M.D. Fla. 2014); Howard v. Magoffin County Bd. of Educ., 830 F. Supp. 2d 308, 313 (E.D. Ky. 2011).
            [3] The union asserted that its members participated in drafting the article.
            [4] The union is an affiliate of the Massachusetts Teachers Association.
            [5] In Anderson v. Selectmen of Wrentham, 406 Mass. 508, 513 n.9 (1990), the Supreme Judicial Court noted the ultimate finding of prohibited labor practices in Town of Provincetown, explaining that the union went to town meeting after negotiations stalled, demonstrating "illegal bad faith bargaining."
            [6] The opinion does not reveal whether the relevant union was involved in urging passage of this town meeting warrant article.  The posture of the case was a subsequent lawsuit by the union (among others) to enforce the town meeting vote.  Anderson, 406 Mass. at 509.  The discussion of good faith bargaining is, arguably, dicta.
            [7] Although the union also invokes its free speech and petition rights under the Massachusetts Declaration of Rights, it makes no argument that the Declaration of Rights provides greater protection than the First Amendment to the United States Constitution.  To the contrary, the union asserts that its rights under the Declaration of Rights are "comparable to those guaranteed by the First Amendment."  Accordingly, we view the question through the lens of the First Amendment.
            [8] A restriction, like the one here, is content-based "if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'"  TikTok Inc. v. Garland, 145 S. Ct. 57, 67 (2025), quoting Reed v. Gilbert, 576 U.S. 155, 163 (2015).
            [9] Moreover, although the union disclaims any suggestion that the Declaration of Rights is more protective than the First Amendment in the present case, this is a situation where the Declaration of Rights may require strict scrutiny.  See Commonwealth v. Lucas, 472 Mass. 387, 397 (2015).
             [10] The union asserts in a footnote that the remedy imposed by the board is an unconstitutional restraint on speech to the extent that it ordered the union to stop failing to bargain in good faith and to refrain from promoting the passage of a warrant article to provide $800 stipends to instructional assistants.  See G. L. c. 150E, § 11 (g) (upon finding prohibited practice, board "shall issue an order requiring the charged party to cease and desist from such prohibited practice, and shall take such further affirmative action as will comply with the provisions of this section").  Accord Boston v. Commonwealth Employment Relations Bd., 453 Mass. 389, 402 (2009).  The union "raises this argument only in a footnote in its brief, so we consider it waived."  Boston Edison Co. v. Massachusetts Water Resources Auth., 459 Mass. 724, 726 n.3 (2011).  Accord Three Registered Voters v. Selectmen of Lynnfield, 90 Mass. App. Ct. 15, 21 n.18 (2016).  We do note that, where a remedy is imposed after a valid finding that the union is engaging in prohibited labor practices, "'[a]ny incidental limitation of First Amendment freedoms' is justified" (emphasis added).  Commonwealth Employment Relations Bd. v. Boston Teachers Union, Local 66, AFT, AFL-CIO, 74 Mass. App. Ct. 500, 506 (2009), cert. denied, 559 U.S. 992 (2010), quoting Zora v. State Ethics Comm'n, 415 Mass. 640, 651 (1993).